James C. Shah, SBN #260435
Email:  jshah@sfmslaw.com
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 429-5272
Facsimile:  (866) 300-7367

Toby J. Marshall *(pro hac vice pending)*
Email:  tmarshall@terrellmarshall.com
Amanda M. Steiner, SBN #190047
Email:  asteiner@terrellmarshall.com
Brittany A. Madderra *(pro hac vice pending)*
Email:  bmadderra@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES BURGESS, individually and on behalf of all other similarly situated, | NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| AMERICAN HONDA MOTOR COMPANY, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Charles ("Chuck") Burgess, on behalf of himself and all others similarly situated, alleges the following against Defendant American Honda Motor Co., Inc.:

CLASS ACTION COMPLAINT - 1

## I.  SUMMARY OF THE CASE

1.     Honda introduced the Bluetooth® HandsFreeLink™ system in its 2004 model year Acura vehicles.  Honda promotes Acura as its luxury brand, offering advanced technology and high performance.  The HandsFreeLink™ system was initially offered as a luxury add-on but soon became a standard feature of Acura models.  The hands-free interface of the HandsFreeLink™ allows drivers to use their phones without using their hands.  Drivers "pair" a smartphone with the car, allowing calls to be made using a microphone and the speakers in the car, and enabling the phone to receive voice commands such as "call home" or "call my office" through the car's system to dial certain numbers or places.

2.     The HandsFreeLink™ system is defective.  It becomes locked into the "on" position even if not in use and remains "on" even after the car's ignition switch is turned off.  Once locked "on," the HandsFreeLink™ unit exerts a continuous, substantial, and (in Honda's words) "parasitic" electric drain on the vehicle's electric system.  This drain depletes and consumes batteries, and leads to premature failure of other essential electric components—such as alternators, which are forced to compensate for the failing batteries.  Acura owners are left with cars that will not reliably start, electrical systems prone to fail even while the car is being driven, and essential electrical parts such as batteries and alternators that must be serviced and replaced.

3.     Honda has known about this defect in the HandsFreeLink™ system since at least June 2005 but has not warned its customers.  As a result, Plaintiff and class members have had to pay out of pocket to replace drained batteries and other electrical components, unaware that the real problem is the HandsFreeLink™ system.  By the time customers discover the defect resides in the HandsFreeLink™ system (if they ever do), the warranty period is typically expired.  Thus, Plaintiff and class members are left to choose between replacing the costly HandsFreeLink™ unit—with no guarantee that the replacement HandsFreeLink™ unit will not also be defective— or paying to disconnect their HandsFreeLink™ system and losing the use of this feature entirely.

CLASS ACTION COMPLAINT - 2

4.     Honda continues to sell and lease vehicles with HandsFreeLink™ without disclosing the defect to consumers.

5.     Plaintiff seeks relief for himself and a class of all other consumers who purchased or leased Acura vehicles equipped with a HandsFreeLink™ system under California law or, in the alternative, a class of Acura owners in Washington, to redress the harm they have suffered as a result of this defective technology.  Plaintiff requests an award of damages and appropriate equitable relief, including an order enjoining Honda from continuing to sell vehicles with the defective HandsFreeLink™ system and requiring Honda to disclose the defect to current Acura owners and repair their vehicles.

## II.  PARTIES

6.     Plaintiff Charles ("Chuck") Burgess is an individual residing in Seattle, Washington.

7.     Defendant American Honda Motor Company, Inc., is a California corporation, and is a North American subsidiary of Honda Motor Company, Ltd.  Honda is headquartered and maintains central operations at 1919 Torrance Boulevard, Torrance, California, 90501.

8.     Honda has a long history of conducting business in California.  From its headquarters in Torrance, California, Honda combines product sales, service, and coordinating functions in North America, and is responsible for the manufacture, development, distribution, marketing, sales, and servicing of Acura-brand automobiles.  In California alone, Honda has 3,000 associates, 1,090 authorized dealerships with 17,500 employees, three research and development centers, three American Honda Finance Corporation Offices, three parts centers, and two sales, service and parts zone offices.  California is also home to subsidiaries Honda Trading America Corp., which procures and supplies raw materials, parts, and equipment, and Honda Performance Development, Inc., which runs the technical operations center for Honda's high-performance racing programs.  In 2014, Honda made $1.5 billion in capital investment in California.

CLASS ACTION COMPLAINT - 3

1    9.    Honda R&D Americas, Inc. (originally Honda Research of California) was

2    established in Torrance, California in 1975 to conduct market research in the United States.

3    Since that time, its role expanded to encompass "complete product creation," including market

4    research, concept development, and styling design.   It opened an additional center in Los

5    Angeles in 1986—the same year Honda established their luxury marque, Acura, and began

6    selling Class Vehicles through United States Acura dealerships.  Although it subsequently

7    expanded and opened offices in Ohio, North Carolina, and Florida, Honda R&D Americas, Inc.'s

8    headquarters in Torrance, California continued to oversee all aspects of design and development.

9    10.    In 2006, Honda R&D Americas, Inc. completed construction on a new Acura

10   Design Studio in Torrance, California.  This facility is dedicated solely to the Acura automotive

11   brand and focuses on the development of future design concepts for Acura models globally.

12   11.    Any decisions regarding the marketing and sale of the HandsFreeLink™ system,

13   the development of the internal Technical Service Bulletins relating to the HandsFreeLink™

14   system, and decisions regarding the disclosure or non-disclosure of the defect, were made in

15   whole or substantial part by Honda in Torrance, California.

16   12.    Any response to issues that arose relating to the HandsFreeLink™ systems would

17   have been led by Honda's Market Quality Group.  The personnel in charge of the

18   HandsFreeLink™ systems for the vehicles at issue in this complaint were located in Torrance,

19   California and Marysville, Ohio.  Honda's Automobile Customer Service Center, which is the

20   primary department within Honda that handles customer complaints to and communications with

21   Honda, including those pertaining to the HandsFreeLink™ systems, is located in Chino,

22   California and Torrance, California.

23   **III.  JURISDICTION**

24   13.    This Court has jurisdiction under the Class Action Fairness Act of 2005, 28

25   U.S.C. § 1332(d), because the proposed class consists of 100 or more members; the amount in

26

CLASS ACTION COMPLAINT - 4

controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court may exercise jurisdiction over Honda because it is registered to conduct business in California, it has sufficient minimum contacts with California, and it intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of the Class Vehicles, thus rendering jurisdiction by this Court proper and necessary.

## IV. VENUE

15.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims of Plaintiff and the other class members occurred in this District and Honda is a California corporation with headquarters and central operations maintained in California.

## V. SUBSTANTIVE ALLEGATIONS

### A.     The Defective HandsFreeLink™ System

16.     Honda acknowledges that the Acura's HandsFreeLink™ system "has an internal problem which creates a 'parasitic current draw' that continues even after the car is turned off." This defect is inherent in every HandsFreeLink™ unit. The parasitic current drain strains the electric system, causing premature failure of the battery and other essential components in the electrical system, such as the alternator. The HandsFreeLink™ system does not even have to be used by an owner to get stuck in the "on" position.

17.     The "parasitic current draw" drains batteries and ultimately causes the battery to fail prematurely and after short periods of non-use. This defect also compromises other essential electrical components. For example, the alternator in an Acura is pressed into extra service to compensate for the compromised battery when the vehicle is in operation, because the battery is

continuously drained by the defect in the HandsFreeLink™ system.  The alternator will therefore also fail at an accelerated rate because of the defect.

18.     Cars contain many components that draw power from the battery when a car is turned off, such as security devices, radio presets, clocks, and wireless receivers to remotely unlock doors.  However, the electrical draw for these devices is minimal and does not compromise the regular life and operation of the battery and wider electrical system.  In contrast, the parasitic draw of the defective HandsFreeLink™ system can place upwards of ten times the strain on the electric system than that which is exerted by all other devices combined.

19.     Honda also acknowledges that this defect evades detection.  In a 2005 internal technical service bulletin, Honda stated:  "If the battery's state of charge goes low enough, or if the battery cables are removed, the system may reset, causing the problem to appear intermittent."  This characteristic ensures that the symptoms of the defect, such as a dead battery or failed alternator, are mistaken for the defect itself.  Even auto dealers and other automotive professionals cannot readily diagnose the defect in the HandsFreeLink™ system: Honda found it necessary to issue additional, internal technical service bulletins in 2008 and 2012 to enable Acura dealers identify this same defect in newer Acura models.

20.     As a result of the defect, Acura owners must repeatedly replace their batteries and pay for expensive repairs and replacement of other failed electrical components.  Their cars do not start reliably and may suddenly lose power—even when in use.

21.     By the time Acura owners discover that the source of their recurring problems is the defective HandsFreeLink™ system (if they ever do), the warranty period is typically expired.  Plaintiff and class members are left to choose between replacing the costly HandsFreeLink™ unit—with another HandsFreeLink™ unit that has the same defect—or paying to disconnect their HandsFreeLink™ system and losing the use of this feature.

CLASS ACTION COMPLAINT - 6

22.     This defect is not isolated to unique vehicles or particular models and years; rather, it is a pervasive problem that is inherent to the HandsFreeLink™ unit and exists in each Acura equipped with a HandsFreeLink™ system.

**B.     Honda Marketed the HandsFreeLink™ System as a Luxury and Safety Feature**

23.     While the technology is increasingly common, the availability of a hands-free interface such as the HandsFreeLink™ System was—and remains—an important selling point among luxury automobile manufacturers.  A hands-free interface allows a driver to make calls with both hands on the wheel and eyes on the road, improving driving safety.  In many states, including California and Washington, a driver is not permitted to use a phone while driving unless they are making calls "hands-free."

24.     Honda introduced its HandsFreeLink™ technology in a 2003 press release, stating that it "delivers hands-free phone capabilities that allow drivers to keep their hands on the wheel while making and receiving calls from their mobile phone."  Honda boasted that the Acura was the "First North American Vehicle to Feature a Standard Hands-Free Phone System," and called the HandsFreeLink™ system "the most effective, most convenient hands-free vehicle phone system available."

25.     For the Acura RDX, the HandsFreeLink™ system has been a selling point from the model's inception.  A 2006 press release advertised the HandsFreeLink™ system as part of Honda's optional "Technology Package," a luxury add-on designed to "heighten[] the RDX's appeal to technology-savvy customers with a range of advanced features," which "puts state-of-the-art communications, navigation and audio entertainment at the driver's fingertips" and "incorporates a class-leading array of sophisticated electronic technologies that are seamlessly integrated to keep its passengers informed, entertained and in touch."  In a 2007 press release, Honda listed "standard Bluetooth® HandsFreeLink®" as one of "a number of upgrades" in the 2008 Acura RDX Crossover, and explained that "[t]he RDX features an array of electronic features that set it apart from the competition.  Standard features include a dual-zone automatic

climate control system, a Multi-Information Display (MID), LED backlit gauges with progressive illumination and Bluetooth® HandsFreeLink™ mobile phone connectivity."

26.     The availability of the HandsFreeLink™ system is still part of the premium price Honda charges for Acuras.  This is evidenced by the fact that the HandsFreeLink™ system remains one of the key features emphasized by Honda in its Acura marketing materials:

> The [2017 Acura] TLX offers an abundance of available luxury features and technologies, including heated and ventilated front seats, HomeLink®, Bluetooth® HandsFreeLink®, Smart Entry/Push Button Start keyless access system, Acura Navigation System with 3D view, and AcuraLink Real-Time Traffic™ with Traffic Rerouting. A 7-inch On Demand Multi-Use Display™ (ODMD) touch screen, located in the center console, controls these and other features, and, with its contextual menus, displays relevant items while minimizing instrument panel clutter.

*See* "Acura TLX Luxury Sports Sedan Speeds Into 2017 Model Year," June 15, 2016, http://www.acura.com/PressReleaseArticle.aspx?category=tlx&year=2016&id=9147-en.

27.     Honda continues to market the HandsFreeLink™ system as a crucial safety feature.  Honda advertises that this hands-free interface allows drivers to "[r]eceive, listen and respond to incoming text and email messages in a manner that helps mitigate the potential for driver distraction. Prepared responses appear on the center display and the system also offers a call-back option."  Honda also introduced AcuraLink®, which can be accessed through the HandsFreeLink™ system, which will send and retrieve location and diagnostic information from the car, relay an emergency notification if airbags deploy, allow law enforcement to track stolen cars, and allow owners to remotely lock or unlock car doors using their smartphone.

28.     Consumers shopping for a new 2017 Acura who visit the website Honda created especially for its *Bluetooth*® HandsFreeLink™ system are still told about the safety features of this product.  Honda represents that "With Bluetooth® HandsFreeLink®, you can connect calls while keeping your eyes on the road and your hands on the wheel."  Honda adds that customers may "Check in with the office without taking your eyes off the road. The *Bluetooth*®

CLASS ACTION COMPLAINT - 8

HandsFreeLink® system works with most *Bluetooth* enabled cell phones to let you initiate and receive calls using through the audio system." *See* http://www.acura.com/HandsFreeLink.aspx and http://www.acura.com/ilx/modals/media-bluetooth-handsfreelink.

**C.   The Defect Turns the Purported Safety Feature Into a Safety Hazard and Causes Class Members to Incur Substantial Costs to Service and Repair their Vehicles**

29.     The defective HandsFreeLink™ system creates a safety hazard.  The defect compromises batteries and other electrical components, leaving owners unable to start their cars when far from home or dealing with an emergency.  The compromised alternator is also subject to premature and sudden failure.  With a compromised battery and a failed alternator, the vehicles may suddenly lose electric power even when in use, causing the vehicle to stall, lose power (including to power assisted features like brakes and steering), lose headlights, trigger multiple warning lights on the dashboard, and otherwise operate poorly or erratically.

30.     Acura owners generally do not discover the real cause of the problem until they experience several drained batteries or failed electric components.  They may never learn about the defect and instead continue to replace batteries and other components.  These expenses go uncompensated because Honda does not offer any special warranty coverage for the defect.  Acura owners may not learn about the real cause of the problem until after the manufacturer's warranty expires, and then they are required to pay nearly $1,000 for labor and replacement of the HandsFreeLink™ unit.

31.     The only 'fix' Honda offers is replacement of the HandsFreeLink™ system with another, standard HandsFreeLink™ unit.  This replacement is also likely to be defective.  Acura owners who thought they fixed the problem by replacing their HandsFreeLink™ systems later report that the new system also gets stuck "on," causing the same harm and creating the same safety hazard.

32.     Many Acura owners who discover that the HandsFreeLink™ system is the real problem choose to disconnect the unit to prevent it from further damaging their car's electrical

CLASS ACTION COMPLAINT - 9

system. Some dealerships instructed their service departments to offer this 'disabling service' for an additional fee. Acura owners who choose to disable their HandsFreeLink™ system not only pay for the service, but are then deprived of a feature for which they originally paid a premium price to have installed in their vehicle. They lose the ability to safely make calls using the HandsFreeLink™ system, and are deprived of any other safety features accessed through the HandsFreeLink™ system. Disabling the HandsFreeLink™ system makes their vehicles less valuable than comparable cars with properly functioning "hands-free" systems.

**D.    Consumer Complaints Confirm the Extent of the Problem**

33.    Numerous Acura owners complained to the National Highway Transportation Safety Administration ("NHTSA") and posted complaints on Edmunds.com and other car comparison sites about problems resulting from the defect in the HandsFreeLink™ system, including safety issues. Below are a few examples:

> 2007 Acura TL: While driving 65 mph, the vehicle stalled and all of the warning lamps illuminated. The vehicle was towed to the dealer. The technician diagnosed that the hands free link failed, causing the battery to drain. As a result, the alternator and hands free link needed to be replaced. The manufacturer was made aware of the failure. The vehicle was not repaired.
> (NHTSA ID: 10531866—Date Complaint Filed: 07/23/2013)

> 2006 Acura TL: The Hands Free Link system in the 2004-2008 Acura TL is creating a drain on the battery resulting in complete electrical failure of the automobile. The incidence of failure is most common immediately after periods of at least 10 hours of non-use or shortly after starting. As a result from this issue I experienced this electrical problem for the past year, from going threw multiple batteries and being in the unsafe situation of my Acura TL losing its power in a very busy intersection. This problem has been reported extensively on multipole Acura owner's websites/blogs and has been confirmed by the local dealership. Given the possibility of in-use electrical failure, a recall should be issued. Are we waiting for someone to be killed or seriously injured before a recall is really issued?
> (NHTSA ID: 10734385—Date Complaint Filed: 07/15/2015)

CLASS ACTION COMPLAINT - 10

2006 Acura TL: When I started the vehicle, it had a moaning sound. I continued driving and the battery light, airbag light, csv light, all came on just before the dash lights flickered on and off, then totally went out and the car engine shut off. When I tried to jumpstart the car, the car started after a few minutes but when the jumper cables were removed, the car instantly shut down. The car was in the middle of the road and had to be towed to my house. Three months ago, the car would not start. I got it jumpstarted and it ran perfectly until the above incident occurred. This is the third battery this car has had since 2009.
(NHTSA ID: 10683420—Date Complaint Filed: 02/14/2015)

2007 Acura MDX: Several times, the electrical system shuts off while driving. I was lucky to be in the neighborhood and not on a highway. The dealer stated there is a problem with the Bluetooth and we have had it replaced. This is the second time this has occurred. The first time it happened, the Bluetooth was under Acura warranty.  It was explained to me that the Bluetooth is drawing energy constantly and the dealer suggested we disconnect it to avoid the same issue happening again. But that is the reason I had bought the car in 2007. It had an integrated Bluetooth. The times the car [shut] off while driving luckily was at a traffic light and in our neighborhood. I just hope that it does not happen while we are on the highway. Acura also stated that maybe the wiring to the battery was stretched and I had to pay to replace it.  I have never had to replace that wire.  I believeth Bluetooth and its controls are defective design but Acura does not want to admit it.
(NHTSA ID: 10811308—Date Complaint Filed: 12/20/2015)

2007 Acura MDX: Related to the hands free link which hasn't work in two years. I have replaced the battery several times (once twice one week, under warranty). I replaced the battery a week ago and ask them to please reset hands free link (a request I make every time the car is serviced).  And my car nav flickers now. Two days ago the car momentarily lost power while I was driving in town!!!!! I was fortunate to be on [a] street with 35mph speed limit and no other cars. It was terrifying.
(NHTSA ID: 1244382—Date Complaint Filed: 12/08/2015)

2008 Acura MDX: If the car parked for 2 or more days it will not start. There is drain in the system. Apparently this is very common problem with Acura. Dealer said that he could try to disconnect Bluetooth (HandsFree Link) for $150-200. My family was stuck in cold winter nights in the parking lot with no people, which was not pleasant. I think Acura should have a recall and disconnect or

CLASS ACTION COMPLAINT - 11

replace defective units for free. We replaced battery a couple of times without any affect.
(NHTSA ID:10730738—Date Complaint Filed: 06/27/2015)

2007 Acura MDX: Car constantly loses power or get warning light stating I need to check my starting system. Have replaced the battery 3 times this year, replaced the alternator twice and have replaced the starter once. Sometimes car does not lose power all the way, but will lose functionality of windows, turn signals, windshield wipers, radio, ac and any other function although car will still drive. Inside the arm rest is usually extremely hot when this happens. So hot that it burns your hand to the touch. After reading over 20 complaints on this same type of issue, it seems to be caused by the handsfree link in the car, which I have not been able to use because it stopped working completely back in March 2014. This issue needs to be recalled before someone is seriously injured or worse!
(NHTSA ID: 10730377—Date Complaint Filed: 06/25/2015)

2004 Acura TL: The biggest problem with my Acura is the battery. I have replaced at least 4 batteries since about 39,000 miles. I never knew why my battery was dying until about two months ago, an employee at Acura told me that the hands free link is draining too much of the battery because of some faulty equipment. I asked for them to cover it for free and was denied because there is no recall with that equipment yet. They are aware that other Acuras have had the same problem and yet they still won't cover my cost for new equipment or at least cover cost to get the hands free disconnected. This device is still draining my battery.
(NHTSA ID: 10524877—Date Complaint Filed: 07/15/2013)

2016 Acura MDX: Inexplainable battery drain on several occasions resulting in not enough power to start car. No solution from Acura except that it happens to a lot of owners. Most recently car died in an intersection (with two kids in car) and could not restart or shift to neutral (without power) to move out of intersection. Car was stopped at intersection, driver moved forward to make turn, driver stopped in intersection and auto-idle engaged (turning car off momentarily), when driver released brake, which would normally restart engine, car would not restart due to loss of power. Stuck for an hour in middle of intersection until jumped. Three days prior to that, car sat for 5 days without use in 40-50 degree weather, and battery was dead when attempted to start. Seems to be a parasitic drain or faulty charging electrical problem with car.

CLASS ACTION COMPLAINT - 12

(NHTSA ID: 10943879—Date Complaint Filed: 01/09/2017)

2013 Acura RLX: Have now had the RLX for 12 months. Battery replaced once, towed by AAA six times to the dealership with an intermittent dead battery issue. The dealership cannot locate the electrical drain causing the battery to fail. Whenever the car is jump started the computer resets and the vehicle works fine for a few days, then the dreaded weak or dead battery. Their most common suggestion is to make sure we drive the car every day to keep the battery charged and take longer trips. Supposedly if the car sits for three or four days the battery could drain far enough to not start the vehicle. Too many visits to the dealer with unsatisfactory results, yet the dealer says they cannot trace the problem, so no lemon law violations. Contacted Honda Regional in Torrance and the same response. They cannot find the problem, so sorry about the inconvenience.
(Cars.com—Date Complaint Posted: 08/15/2014)

2014 Acura RLX: This would be a great car if not for a problem with something draining the battery. I purchased the car in May 2014; Had to call Acura roadside assistance to start car in Jan 2015, and again in Sep 2015. The car was taken to the dealership to be checked out after each incident, but maintenance personnel could not find the problem. The only thing they could tell me for sure, was that there was no problem with the battery, They suggested that I might not be driving the car often or far enough, or that I might be storing the keys less than 15 feet away from the car. When I called Acura I was told the same thing, which to me suggested that because neither organization could find out what was draining the battery, they somehow figured I was doing something wrong. It is very frustrating to be paying so much for an unreliable car. Too bad I didn't buy a Mercedes.
(Cars.com—Date Complaint Posted: 10/16/2015)

2006 Acura TSX: The car would not start, dead battery after not being driven for 2 days. I had AAA jump my battery like 6 times over a 6 week period that I ran out of my AAA Jumps for the year. After getting a new battery as that was the assumption for $165, the car continued to have the issue at the worse times, car cost me over $125 dollars to have the dealer unplug the Hands Free Link. I had asked if I could do it myself, was told that it was hard to reach. However, other person complaint , obviously had no issue locating and doing it themselves.  So, I am out of pocket almost $300 when it appears I could have just done it myself…

CLASS ACTION COMPLAINT - 13

1

(CarComplaints.com—Date Complaint Posted: 12/01/2015)

2

3

4

5

6

2007 Acura MDX: Battery in our 2007 Acura MDX has had to be replaced 3 times in the past couple of months! Turns out that the handsfree link module was draining the battery and causing it having to be replaced numerous times. This could cause a fire which can pose as a deadly result especially if the car is parked inside of a garage. This needs to be replaced by Acura free of charge asap!
(NHTSA ID: 10650391—Date Complaint Filed: 10/27/2014)

7

8

9

10

11

12

13

2007 Acura TL: Vehicle's battery drained while sitting for 2 weeks without driving it. Towed to dealer. Dealer diagnosed a battery drain coming from the handsfree link unit. Part was $350+. Dealer explained that the labor was $150+ whether they deactivated the faulty unit or whether they replaced it with a new unit. I opted for the new unit. total bill was -$800 which included ludicrous "dealer-compliant" towing company. Dealer also replaced battery at this time (under warranty because i'd had a similar problem 4 months earlier - however it was not diagnosed at that time as hfl unit). Car sat again for 1 week. Brand new battery is now completely dead again.
(NHTSA ID: 10622161—Date Complaint Filed: 08/13/2014)

14

15

16

17

18

19

20

21

22

23

2008 Acura RL: My in laws bought this car in 2010 shortly after they had it they noticed it was dead in the morning. They thought it was because they left something on. The dealer had it at least 3 times for the same thing couldn't find a thing wrong with it. I bought the car from them 2 years ago I'm still having the same problem the battery is 100% I never know when it's going to happen I drive it to work every day. It's embarrassing to drive a car of this quality with jumper cables in the trunk. I took it to a different dealership left it for 2 days same thing they say everything checked out just fine. This car has so many options on it—it is ridiculous the manual is as thick as a bible. Thinking about selling this car if they don't get to the bottom of this problem soon. The car only has 70.000 miles on it. Anyone else had this problem would love to hear it. Thanks.
(CarComplaints.com—Date Complaint Posted: 04/08/2016)

24

25

2005 Acura RL: HF Link stuck on and draining the battery, radio wont work now either. Neither buttons for HF Link on steering wheel work either.
(CarComplaints.com—Date Complaint Posted: 02/29/2016)

26

CLASS ACTION COMPLAINT - 14

2007 Acura RDX: Parasitic battery drain from hands free link unit causing battery to go dead. Googled the issue and saw many complaints regarding this issue. I was on a road trip from California to Minnesota and had stopped at a vacant parking lot to take a nap. I turned off the lights, turned the vehicle off and removed the key, 4 hours later my battery was dead. I ended up buying a new battery and a few months later I flew out to California again for 3 days, when I returned my car was dead again.
(NHTSA ID: 10780894—Date Complaint Filed: 10/08/2015)

2007 Acura MDX: Battery was found to be completely drained on a few occasions after sitting off overnight. After examining possible culprits when the batter was found drained it was found that the handsfree module located in the rear of the center console was hot to the touch. After removing the module completely and recharging the battery this incident of battery drainage has not occurred in 3 months. The handsfee module that operates the bluetooth and handfree functions of the car is defective to the point that it pulls a constant load from the battery even when the car is shut off and keys are not in the ignition. Searching the internet finds many other owners of the same model to have the same problem. This module should be replaced by the manufacturer free of charge because it can lead to a dead battery with no way to start the car, as well as possible fire from the amount of heat built up in the faulty module.
(NHTSA ID: 10504099—Date Complaint Filed: 03/22/2013)

2006 Acura MDX: HFL on my 2006 mdx stopped working a while back. [..] For almost an year, the battery on the mdx keep draining and I would require a jump start if I don't use it for 2-3 days. It looks like the faulty Bluetooth HFL is causing the battery drain. Many people out there have the same problem, not only with 2006 Acura MDX, but also with some different Acura models.
(NHTSA ID: 10554246—Date Complaint Filed: 12/01/2013)

2007 Acura TL: After being parked for about 2 weeks the battery started fine. I drove 10 miles, turned off the car for 1 hour, tried to start the car again and the engine would not turn over. The inside lights were on but the headlights were dim. After trying to start the car several times both the inside lights and the headlights were completely out. I had to call AAA for a jump because the battery was dead. I thought this was odd but then I remembered a friend of mines has a 2008 TL and he has to jump his battery weekly. So I

did an internet search and learned that thousands of Acura owners are having the same problem and most attribute the problem to the Hands Free Link systems (HFL). So I called Acura and they confirmed that the cause is most likely due to Hands Free Link system. Why hasn't this been a recall? Is Acura waiting for some to die first? This is safety issue and a racket! The dealer charges nearly $200 to diagnose the problem and several hundred more dollars to fix it. A recall is warranted!!!
(NHTSA ID: 10585705—Date Complaint Filed: 04/30/2014)

2007 Acura TL: My car sat at airport for approximately a week and would not start upon return. Got a jump and was ok for about a week when again it would not start after sitting in the garage for 3 days. I took the battery to the store for a replacement. He tested this 2 year old battery and it was perfect. I went on-line to search for this problem and the years 2004 through 2007 have a large number of incidences exactly like mine. The problem that the on-line audience has found is that over time a partial short circuit in the HFL (Hands Free Link) module appears. This is clearly a latent defect in this module. I wrote to Acura customer service and their response did not address the specific problem. I got a "cook- book" response that I should bring it to the dealer for them to check it out. Is there anything you can do regarding such latent defects for out-of-warranty vehicles?
(NHTSA ID: 10743476—Date Complaint Filed: 07/25/2015)

2006 Acura TL: Battery failure after 18 months/17,000 miles. Was advised by service dept. representative that car's bluetooth feature acts as a "vampire" drain on the battery even when the engine is off. Said it's a known problem with 2005 and 2006 models.
(NHTSA ID: 10435224—Date Complaint Filed: 11/10/2011)

2005 Acura MDX: HFL/Bluetooth function inoperable and disconnected due to parasitic drainage. Need to replace no warranty coverage. Sent 3 certified letters to Acura corporate officers seeking answers, yet to receive a response from anyone. This is what you get from buying a luxury vehixle from Acura.
 (NHTSA ID: 10649485—Date Complaint Filed: 10/23/2014)

2006 Acura TL: The handsfree link (bluetooth) module failed. I've read that this is a common occurrence from the website I belong to Acurazine.com (a website for Acura owners/enthusiasts). I consider it a safety issue since it allows you to use your cellphone while driving without having to use your handset. The car's stereo speaker system and a built-in microphone allows you to conduct a

phone call. I have read it is a poor design choice on Acura's part placing the Bluetooth module in the car ceiling near the roof. Sitting in the sun, the module "fries" and eventually fails. Acura refuses to do anything about it stating that it is out of warranty. They want to charge $110 just to diagnose it and over $700 to install a new device. I hope Acura owners complain and write letters to Acura about this issue. I feel a safety recall should be issued and perhaps even relocating the module out of the heat from the sun.
(NHTSA ID: 10436166—Date Complaint Filed: 11/17/2011)

2006 Acura TL: My car battery kept dying every 3 months, I even got a new battery and my car was still dying. I was stranded at the bank in a parking lot, my driveway, and at work. After it died again and wouldn't start with a new battery I called the dealership. They stated it is my blue tooth, which hadn't been working, that is draining my battery and they have seen it in my model and year. I had to pay $100 to have it disconnected and they want to charge me $400 to have it replaced. I replaced it and now they wont reimburse me. This should be a recall and it is a safety issue being stranded with your car not starting. I have a baby that is not ok with me to wonder if my car will start. Please help[.] Acura needs to be accountable for this faulty part and the safety of people driving their cars.
(NHTSA ID: 10587511—Date Complaint Filed: 05/09/2014)

2006 Acura TL: The hands free link system in my 2006 Acura TL is creating a drain on the battery resulting in complete electrical failure of the automobile. The incidence of failure is most common immediately after periods of at least 10 hours of non-use or shortly after starting. If not for AAA, I would have been left stranded 300 miles away from my home. I have replaced 2 batteries thinking that was the cause within the last 3 years. Something needs to be done! recall!!!
(NHTSA ID: 10682328—Date Complaint Filed: 02/09/2015)

2009 Acura MDX: Bluetooth stopped working and a few weeks later, my car wouldn't start. I replaced the battery and a few days later the car stalled on me as I was pulling out of my spot!!!!! I went to the Acura dealer and explained to the guy that my battery kept draining. He asked me if my Bluetooth stopped working, I was shocked because I hadn't mentioned any issues with my Bluetooth but I let him know that in fact, the Bluetooth had stopped. The rep said it's a common problem in my vehicle. Had to replace the Bluetooth and paid $600!!!! My friend's sister has the

CLASS ACTION COMPLAINT - 17

same make car and her Bluetooth stopped working and her car battery keeps going dead. It's very scary since apparently I must have started the car right before the battery died again. Imagine what would've happened if it had stalled on a highway or a busy street!
(NHTSA ID: 10823427—Date Complaint Filed: 02/01/2016)

2006 Acura TL: The Hands Free Link system that uses Bluetooth to connect to your cellular phone is defective. It kills the car battery, always drawing current from the battery even when the car is parked and not running. Had battery replaced all ready. Manufacturer suggested repair is to disconnect the hands free link from the vehicle. I feel this is unsafe. It would cause people to use there cell phones without the hands free feature while driving, which in turn could cause an accident. So this is a major safety issue and I feel Acura should resolve the problem. I have researched this issue and have found that this problem is widespread throughout at least two models of Acura (Acura MDX and Acura TL), and approximately years 2004 through 2008.
(NHTSA ID: 10760824—Date Complaint Filed: 09/01/2015)

2006 Acura TL: Battery kept going dead and stranding me in multiple places. Had to purchase a portable car starter in order to keep restarting the car. Couldn't find any official reasons behind it from any acura sources. After some internet searching I found out that the HFL Bluetooth module was causing a battery drain for many other owners. Solution was to remove the module. After that the problem went away. Was stranded multiple times -- very unsafe!! Also had to purchase car starter and new battery! Acura dealers refused to pay for the new HFL replacement. This is a safety issue that has affected many drivers. Could be very dangerous.
(NHTSA ID: 10823779—Date Complaint Filed: 02/02/2016)

2010 Acura TSX: I have the same car and my HFL went out about 2 weeks ago. I have learned quite a bit in the past few days. This is definitely a big problem. The repair place I talked to told me that the supplier has at least 3 in stock. If suppliers are carrying expensive items like the HFL then they expect to be selling about 1 per week. He has replaced many of them and feels Honda should be replacing them at no cost given how many he has had to replace. He also said counseled against buying a used one -- for obvious reasons. BE CAREFUL ABOUT AN ANCILLARY PROBLEM--yesterday my car wouldn't start. I was told by the Acura dealer and the 3rd party repair facility that the broken units

drain your battery. You have not choice but to shell out the $700-$800 -- Same cost whether you have the navi or not. I asked if they could just disconnect it and the dealer said no, they were not allowed to.  In my opinion, this is a recall item but will they recall something that is not a "safety" issue? If not, from what I've heard and what I've just read, this seems to be a class action issue.
(EDMUNDS.COM, Date Complaint Posted: June 2011)

Acura TL: I have been having problems with my HFL for a couple months and have just been making due without it. However now, my battery keeps dying because apparently the HFL is draining it. I took the car into my local Acura dealer (Acura of Pleasanton, CA) and they want $150 just to diagnose it and another $500 if it needs replacement. Could you send me whatever information you were able to gather? Also did you just replace the module yourself or did you have the dealership take care of it for you? Thanks for the help!
(EDMUNDS.COM, Date Complaint Posted: October 2011)

2006 Acura TL: I brought my 2006 TL for A service on Saturday and to see why my HFL wasn't working. I was told it is not covered by warranty (I purchased the 100,000 extended warranty). I asked them how would I be able to break it and they said I can't, so I asked why isn't it covered by the extended warranty? They said the wording is in the small print of the extended warranty contract. After reviewing all these complaints, It is an Acura service issue not an owner issue. I am on my 4th Acura and told the service rep, to discuss my issue with the Service and Sales Manager and call me back with a better resolution. I'll let you know what the response is later.
(EDMUNDS.COM, Date Complaint Posted: October 2011).

2005 Acura TL: My Bluetooth stopped operating on my Acura TL 05, unaware since I didn't use it for my last phone I purchased...A couple of months ago my car battery died a few times and left me stranded the few times long story short called my Acura dealership whom I've been a loyal customer for 5yrs told me it was the Bluetooth causing a parasitic draw on my battery and that they would disconnect it for free (since I didn't have $550 to replace Bluetooth module)...After a couple of weeks battery kept dying went back to Acura and they did a parasitic test ($135.00) and told me that it seems I need a new multiplex unit $950+ to replace and that maybe that'll solve my problem... I refused and went for a second opinion. Low and behold the Einstein at Acura that was supposed to have disconnected the Bluetooth didn't unplug it

correctly (unknowingly or knowingly) and disconnected my map lights instead since its housed in the same compartment ...Either way I feel that they were taking advantage of me and went parasitic in my pocket for more ($)...My second opinion unplugged the HFL module and haven't had a problem since..Be careful people do your research first...You can buy the part and do it yourself if you follow the Acura bulletin 05-020 or just unplug the Bluetooth and the draw will go away if you don't want to replace it...I'm going after Acura for my parasitic draw test fee, since all along they were lying to me, at this point and after many stranded nights they should had replaced it for free!

(EDMUNDS.COM, Date Complaint Posted: March 2012).

2008 Acura TL: I have 08TL. I had it's fourth battery installed in Nov.,2012. It has just gone dead. When I talked to Auto-Zone about replacing it, they said to have the alternator checked even tho its numbers were in the normal range. When I talked to the service manager at my Acura dealership. Without hesitation he said bring it in. He disconnected the Bluetooth connection and said I should. Have no more battery problems. But no Bluetooth. He said we would discuss the options later. If yours was a preowned car they may have disconnected the Bluetooth.

(EDMUNDS.COM, Date Complaint Posted: May 2013).

Acura TL: Add me to the growing list of angry Acura TL owners with a hand free link problems and an extremely poor customer service experience. With such a wide spread failure rate Acura should recall this unit and/or make the repair reasonable. The repair cost is outrageous for a major safety issue. Acura has been replacing batteries in this vehicle free of charge since 15,189 miles. Each battery lasted fewer months. No one at Acura looked into the cause of the repeated failures. I was led to believe the batteries were lemons and the vehicle was fine when it was the other way around. Now the vehicle is out of warranty and Acura customer service acts like they have never heard of the this problem! Please alert the national highway transportation safety authority and all Acura drivers that there is a major safety issue with the Acura TL and the Hand Free Link. We need to spread the word. I have owned 6 Acuras and 2 Hondas and my past experience with Acura/Honda has been that they stand behind their product. Not so anymore, and I will never buy another Acura. This experience has tarnished my image of the Acura brand.

(EDMUNDS.COM, Date Complaint Posted: July 2013).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

2008 Acura TL: I too have a HFL Bluetooth that no longer works and just replaced battery after taking it to the dealership. They told me that the battery had a bad cell. The battery was replaced in 2010 when the car was still under warranty. The dealer told me that I would have to pay full price for the battery ($160). I explained to them that I had a bad Bluetooth and I thought that it was pulling on the battery. They tested the electrical and told me that everything was fine.....meaning nothing was drawing on the battery. I decided to get a battery from another source. Boy, I wish I had discovered these posts prior to taking my car to the dealer. Can anyone give me step by step instructions on disconnecting the Bluetooth so that it does not draw down my new battery? (EDMUNDS.COM, Date Complaint Posted: August 2013).

2008 Acura MDX: Hi, I have owned an 2008 MDX since new and after paying to replace battery, HFL failed, then a few months later battery was flat in morning. Dealer said "don't bother cause it'll cost $800 to replace HFL" not once advising me on the ramifications. So, after reading some forums online I disconnected the HFL myself (thank the universe for the internet and those who've had this problem before me). I don't know how much the part would cost in Canada, but I ordered the same part (with a slightly different part number, I guess cause it has Spanish vs Francais) from eBay (Acura of Tempe) for $204.00 all in. (EDMUNDS.COM, Date Complaint Posted: December 2013).

2007 Acura TL: This faulty Hands Free Link issue is absolutely unacceptable, especially since Acura has allowed it to proliferate for so many years and victimize all of you here who have spent so much time and money on this! In fact, Acura must be one of the worst luxury auto brands after all of the issues I've dealt with. I have a 2007 Acura TL that was serviced multiple times while under warranty for issues such as a "mysterious power draw" and sticking side view mirror. The dealer's service dept stated they couldn't find the source of the power drain, so they simply put in a new battery as if that was an answer. And the sticking side view mirror still gets stuck. As soon as the warranty ran out, they gave me the cold shoulder. My Acura TL now won't start after only three days of non-use because its battery gets completely drained. The battery is new, the alternator passed tests, and online forums all indicate a known Acura service bulletin for the culprit being the faulty HFL module. Acura service depts want to charge just to look at it, and Acura customer relations refuses goodwill service and told me to pay for the repair myself! This is outrageous! I want to at least be able to drive my car, so I removed the HFL module myself, which

was easy. That module was hot to the touch like a smartphone after playing a long movie! And the car hadn't been driven for two days! Guess what? My car's battery no longer gets drained. (EDMUNDS.COM, Date Complaint Posted: March 2014).

2006 Acura TL: I have a 2006 TL. Last week, it was sluggish to start. I was told that it had a faulty HFL connection that was draining my battery (a battery that was replaced 4 months ago). I told them that I have never used the darn thing and I've had the car for 7 years! It cost $400...I just now came across this forum and learned that it could be disconnected...acura did not tell me that!! Today, my car did not start at all. I had to get it towed to Acura for them to tell me that my starter was kaput! Now, I am thinking maybe it was the starter all along. Until, now I used to love my car...but almost $1000 in seven days!!!! This is appalling! I sent an e-mail to Acura client relations. Something needs to be done about this!
(EDMUNDS.COM, Date Complaint Posted: April 2014).

2008 Acura MDX: I have an Acura 2008 MDX, I have the same dead battery issue others have reported. I have gone through 4 batteries over the past 5 years. Most recent new battery was installed a month ago, yesterday went out to the car and it was dead. I contacted the mechanic who installed the new battery. He said they ran a test and found a malfunctioning circuit that powers the Bluetooth Hands-Free Link. Said that the HFL was drawing current from the battery while the car was off.  It wasn't drawing a lot of current, but enough to kill a battery over the course of a few weeks.
(EDMUNDS.COM, Date Complaint Posted: November 2015).

2006 Acura TL: I have been dealing with this serious electrical issue for nearly 4 years now. I have gone through 5-6 batteries and have been stranded numerous places as the car doesn't start after a period of time. This is no okay when you have children, it's a safety issue and Acura needs to fix it! With nearly 50,000 miles on my car, my whole navigation system failed. I opted not to have it fixed because they wanted to first try having me buy new cd's to update the system. In conjunction with that fail, the battery dies after a day of not being started...sometimes even over-night. I have read that several cars have faulty HFL that heat up and cause this problem.  The HFL was hot to touch when I went to disable it.  I disconnected mine so that a fire would not start putting me and my family at risk. The electrical dash displays quit working when the navigation system failed making it impossible to see or change the

clock and radio displays.  Even with the HFL link disabled which is what the dealarships suggest for resolving the battery drain issues, the car still loses battery power. I am a concerned parent and feel that this should have been recalled a long time ago as there is plenty of evidence from many documenting this ongoing problem. It is not okay that the battery or electrical system may fail in the middle of driving and causing accidents or deaths. That coupled with freezing temperatures and I am driving two small children around in a car that has a great deal of safety concerns!
(NHTSA ID: 10806481—Date Complaint Filed: 11/24/2015)

**E.    Honda Has Known About the Defect Since At Least 2005 But Concealed It From Consumers**

34.    Honda has known about the defect since at least June 29, 2005, when it issued an internal Technical Service Bulletin for the 2004 model year entitled "TSB 05-020, HandsFreeLink (HFL) System Does Not Work" to Acura dealers.  In the bulletin, Honda said that the HandsFreeLink™ system will get "locked up" in an "on" position, which "may cause a dead or low battery while the vehicle's ignition switch is off."  Honda said that "a locked up HFL system will account for approximately 200mA of parasitic current draw" even after the vehicle is turned off.  Honda also acknowledged in the bulletin that the problem may be difficult to diagnose because the system can "reset" after the battery is drained:  "If the battery's state of charge goes low enough, or if the battery cables are removed, the system may reset, causing the problem to appear intermittent."  As a result, it may appear that a vehicle's battery or alternator is the problem when in fact they are failing because of the defective HandsFreeLink™ system.

35.    Honda systematically concealed the defect from consumers.  After the June 2005 bulletin, Honda issued at least three more internal Technical Service Bulletins over a span of ten years.  None of the bulletins provided a way to permanently fix the HandsFreeLink™ defect, and none of the bulletins were made public or disclosed to consumers.  Instead, Honda continued to sell Acuras with the HandsFreeLink™ system.  Honda directed dealers to use the same type of HandsFreeLink™ unit for replacement, thus giving the impression that any defective units were unique, individualized cases and making it appear any defective units had been 'fixed.'  Honda

1    also provided no special warranty coverage for replacement of the HandsFreeLink™ unit and

2    affected electrical components, instead maintaining that the standard warranty applied.

3        36.    On December 6, 2008, Honda issued an internal Technical Service Bulletin

4    entitled "TSB-08-057 HandsFreeLinkTM (HFL) Doesn't Work," which was again distributed

5    only to Acura dealers.  In this bulletin, Honda reported that more recent models had the same

6    defect in their HandsFreeLink™ systems.  Honda said that the HandsFreeLink™ "control unit

7    has an internal problem, which creates a parasitic current draw of 250mA."  One of the

8    symptoms Honda reported was that the battery would be so drained that it could not start the

9    vehicle.  Honda told dealers to use the same type of HandsFreeLink™ unit for replacement.

10       37.    On July 14, 2012, Honda updated TSB-08-057 with another bulletin entitled

11   "HandsFreeLinkTM (HFL) Doesn't Work, or Battery is Too Low to Start the Engine."  Honda

12   again acknowledged that "the HFL control unit has an internal problem, which created a parasitic

13   current draw of 250 mA," and again instructed technicians to use the same type of

14   HandsFreeLink™ unit for replacement.

15       38.    Honda also knew or should have known about the defective HandsFreeLink™

16   system and its resulting performance and safety problems at the time of and prior to Plaintiff's

17   and class members' purchases through other sources, including: Honda's own records of

18   customer complaints directed towards Acura's customer service department, as well as

19   complaints filed with NHTSA and posted on internet forums, Acura dealership repair records

20   relating to the defect in the HandsFreeLink™ system, and warranty and post-warranty claims

21   relating to the defect in the HandsFreeLink™ system.

22   **F.    Honda's Deceptive Warranty Process**

23       39.    Honda advertises that all Acura models are "covered by a comprehensive 4-

24   year/50,000 mile bumper-to-bumper limited warranty and a 6-year/70,000 miles powertrain

25   limited warranty."  The warranty promises to "repair or replace any part that is defective in

26   materials or workmanship under normal use," free of charge.  The relevant terms of the

1    warranties for each of the models of Plaintiff's and class members' vehicles are identical or

2    substantially similar.

3           40.    Honda's marketing and advertising campaigns tout the company's "Safety

4    Through Innovation" philosophy and represent that Acuras incorporate "advanced technology"

5    and "a class leading array of features that keep passengers informed, entertained, and in control,"

6    including the Acura Bluetooth® HandsFreeLink™, as part of the company's comprehensive

7    approach to safety, luxury, and performance.

8           41.    Even though it knew about the defect in the HandsFreeLink™ system, the

9    defect's ability to evade detection, and its penchant to cause the battery and other essential

10   electrical components to fail, Honda continued to sell vehicles equipped with the defective

11   HandsFreeLink™ system.  Honda continued to charge a premium price for this system.  Honda

12   did not inform Plaintiff and class members about the defect during the warranty period and did

13   not fulfill their contractual duties under the warranty.

14          42.    Plaintiff and class members experienced damage from the defective

15   HandsFreeLink™ system within the warranty periods of their vehicles, although many did not

16   know that the HandsFreeLink™ system was the cause of the problems at the time.  Plaintiff and

17   class members reasonably expected that any and all damage resulting from the defect would be

18   covered under the warranty, and that they would not be charged for the repairs or replacement.

19          43.    Honda's concealment of the defect during the warranty period deprived Plaintiff

20   and class members of the benefit of their warranties.  Class members who brought their vehicles

21   in to be serviced during the warranty period did not have their vehicles repaired or replaced as

22   promised in the warranty, because fixes attempted during the warranty period (1) only temporary

23   remedied the symptoms of the defect (such as the failed batteries and other compromised

24   electrical components), (2) perpetuated the problem by replacing the HandsFreeLink™ unit with

25   an identical unit equally likely to be defective, or (3) deprived class members of the use and

26   benefit of a feature for which they paid a premium, because they were forced to disconnect the

HandsFreeLink™ unit to disable it and prevent further damage to their vehicle.  Other class members would have serviced their vehicles during the warranty period, but were deprived of the opportunity.  After their warranty periods expired, many class members repeatedly incurred substantial repair and replacement costs for dead batteries, alternators, or other electrical components that prematurely failed, replacement HandsFreeLink™ units, and fees to disconnect the HandsFreeLink™ units.

**G.    Plaintiff's Experience With the HandsFreeLink™ System**

44.    On October 25, 2008, Plaintiff Chuck Burgess purchased a new 2008 Acura RDX from Acura of Lynnwood, 21515 Hwy 99, Lynnwood, Washington, 98036.

45.    Prior to purchasing this vehicle, Plaintiff conducted extensive online research, visiting Acura's website and reading consumer reviews on sites such as Edmunds.com.  Plaintiff also visited Acura of Lynnwood to test drive the car before purchase.  During this visit, he spoke with dealership personnel extensively about the 2008 Acura RDX.  Based on the statements he reviewed online and representations made by the dealership personnel, Plaintiff was persuaded that the 2008 Acura RDX was a reliable, functional, and safe vehicle.  These particular qualities were important to Plaintiff, who traveled frequently to Eastern Washington at the time and commuted daily from north of Seattle to Auburn, Washington (2.5-3 hours round-trip).

46.    Plaintiff was given a demonstration of the HandsFreeLink™ system during his test drive at Acura of Lynwood, and was shown how to set up the system.  After learning that this particular model came with HandsFreeLink™ and seeing the demonstration, Plaintiff became convinced of the value of the HandsFreeLink™ feature.  This feature was particularly important to Plaintiff, because he was on the road for 2.5 to 3 hours each day.  This feature was also important to Plaintiff because he was constantly on call due to his responsibilities as systems support for Safeway distribution and needed to answer work-related calls safely, even while on the road.

47.     Plaintiff decided to purchase the 2008 Acura RDX.  He reached this decision in part because the vehicle included the HandsFreeLink™ system, and in part in reliance on representations about this vehicle's safety, reliability, and functionality described above.

48.     After buying the vehicle, Plaintiff paired his HandsFreeLink™ unit with his Blackberry Mobile Phone.  In December 2012, Plaintiff paired his HandsFreeLink™ unit with his iPhone 4.

49.     Plaintiff did not know that the Acura he purchased was equipped with a HandsFreeLink™ unit that was defectively designed.  The defect causes the HandsFreeLink™ unit to continue to drain the battery even after the vehicle is turned off.  Neither Acura of Lynwood nor Honda informed Plaintiff of the defect.

50.     The battery in Plaintiff's Acura died first in 2014.  Plaintiff brought his vehicle to Rick's Tire and Service in Seattle, Washington for service on May 15, 2014.  The battery was replaced at a cost of $127.95 for the battery and $14.50 for its installation, before tax.  Plaintiff paid these costs himself.  He did not know that the drained battery was caused by the defective HandsFreeLink™ system.

51.     In August 2016, Plaintiff noticed that the HandsFreeLink™ system was not connecting with his iPhone 4 or only connected intermittently.  When he tried to use the system, it stated that no phone was found.  By September, the HandsFreeLink™ system was not responsive.

52.     Shortly thereafter, on December 10, 2016, his battery died again.  Plaintiff had not driven his car on Friday, December 9, 2016.  When he tried to start his car on Saturday afternoon, the lights in the car went out and the car refused to start.  Plaintiff called AAA, which sent someone who confirmed the battery's cells had failed and jump started the car.

53.     Plaintiff drove his vehicle to Acura of Lynnwood, in Lynnwood, Washington for service.  Plaintiff spoke with service advisor Rick Rickstool.  He requested that the dealer inspect his HandsFreeLink™ system in addition to checking the battery.

CLASS ACTION COMPLAINT - 27

54.   The dealer checked the battery and determined it needed to be replaced.  Plaintiff once again paid for this replacement, at a cost of $154.95, before tax.

55.   Because Plaintiff asked the dealer to inspect the HandsFreeLink™ as well, he inadvertently learned about the defect.  The dealer told Plaintiff that the HandsFreeLink™ unit was faulty, had been drawing current from and weakening the battery, and needed to be replaced.  The dealer the estimated that a new HandsFreeLink™ unit would cost $777 before tax.

56.   The service advisor admitted that he had encountered this problem with the HandsFreeLink™ unit before, but he did not elaborate.  He did not tell Plaintiff that the problem was a defect inherent in the design of the HandsFreeLink™ system.  He did not explain that this was a known defect that affected countless other Acura drivers.  He did not indicate whether replacing the HandsFreeLink™ unit would be a permanent fix.

57.   Reluctant to pay that much for the replacement part, Plaintiff had no choice but to have the dealer disconnect the HandsFreeLink™ unit instead.  Plaintiff paid $127 before tax for the inspection and disconnection of the HandsFreeLink™ unit.

58.   Since disabling the HandsFreeLink™ unit, Plaintiff has been unable to use one of the key features of his 2008 Acura RDX, a feature that was one of the reasons he chose to purchase the vehicle in the first place.  He has lost the ability to safely make and receive calls through his HandsFreeLink™ system while on the road.

59.   Honda did not disclose the defect to Plaintiff, so he purchased the vehicle on the reasonable, but mistaken, belief that the 2008 Acura RDX was merchantable and safe to operate as designed.  Had Honda disclosed that the HandsFreeLink™ unit could lead to vehicles that were not in safe condition and did not perform reliably in ordinary use—insofar as they failed to reliably start and contain electrical components that may fail even while the vehicle is in operation—Plaintiff would not have purchased the vehicle or would have paid less for it.

CLASS ACTION COMPLAINT - 28

# VI.  CLASS ALLEGATIONS

60.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following nationwide class:

> All persons who purchased or leased an Acura with a HandsFreeLink™ system.

61.     In the alternative, if California law does not apply to all owners, Plaintiff brings this action on behalf of himself and the following class:

> All persons who purchased or leased an Acura with a HandsFreeLink™ system in the State of Washington.

Excluded from the class are Defendant and its parents, subsidiaries, and affiliates; all persons who properly elect to be excluded from the class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.

62.     **Numerosity.**  Honda sold thousands of Acuras with HandsFreeLink™ systems, including a substantial number in Washington.  Members of the proposed class likely number in the thousands and are thus too numerous to practically join in a single action.  Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

63.     **Commonality and Predominance.**  Common questions of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members.   These common questions include:

a.     Whether Honda's HandsFreeLink™ system is defectively designed such that the systems do not reliably switch off when not in use, and when stuck "on" create a constant and substantial parasitic electric drain on the electric system, leading to drained and dead batteries and premature failure of other essential electrical components of the vehicles;

b.     Whether Honda knew or should have known that its HandsFreeLink™ system is defectively designed and, if so, when it discovered this;

CLASS ACTION COMPLAINT - 29

1           c.     Whether Honda had a duty to disclose the existence of this defect;

2           d.     Whether Honda failed to disclose or concealed the existence of this defect

3 from customers;

4           e.     Whether knowledge of the defect would be important to a reasonable

5 person because, for example, it poses a safety hazard;

6           f.     Whether Defendant engaged in conduct that violates California and

7 Washington consumer protection statutes and other laws, as alleged herein;

8           g.     Whether Honda breached its warranty obligations;

9           h.     Whether Honda should be required to notify class members about the

10 defect and cease its practice of providing identical replacement HandsFreeLink™ units;

11           i.     Whether Plaintiff and the other class members are entitled to equitable

12 relief, including, but not limited to, restitution or injunctive relief; and

13           j.     Whether Plaintiff and the other class members are entitled to damages and

14 other monetary relief and, if so, in what amount.

15      64.   **Typicality.**  Plaintiff's claims are typical of the claims of the proposed class.

16 Plaintiff and members of the proposed class all purchased or leased an Acura with a defective

17 HandsFreeLink™ system, giving rise to substantially the same claims and injuries. Thus, Acura

18 models and the hands-free interfaces in these models are all sufficiently similar for the purposes

19 of this action.

20      65.   **Adequacy.**  Plaintiff is an adequate class representative because his interest does

21 not conflict with the interests of the other members of the class he seeks to represent, Plaintiff

22 has retained counsel competent and experienced in complex class action litigation, and Plaintiff

23 intends to prosecute this action vigorously. Class members' interests will be fairly and

24 adequately protected by Plaintiff and his counsel.

25      66.   **Superiority.**  A class action is superior to other available means for the fair and

26 efficient adjudication of this dispute.  The injury suffered by each class member, while

CLASS ACTION COMPLAINT - 30

1   meaningful on an individual basis, is not of such magnitude as to make the prosecution of

2   individual actions against Honda economically feasible.  Even if class members themselves

3   could afford such individualized litigation, the court system could not.   In addition to the burden

4   and expense of managing many actions arising from the defective panoramic sunroofs,

5   individualized litigation presents a potential for inconsistent or contradictory judgments.

6   Individualized litigation increases the delay and expense to all parties and the court system

7   presented by the legal and factual issues of the case.  By contrast, a class action presents far

8   fewer management difficulties and provides the benefits of single adjudication, economy of

9   scale, and comprehensive supervision by a single court.

10          67.     In the alternative, the proposed class may be certified because:

11                  a.      the prosecution of separate actions by the individual members of the

12   proposed class would create a risk of inconsistent adjudications, which could establish

13   incompatible standards of conduct for Honda;

14                  b.      the prosecution of individual actions could result in adjudications, which

15   as a practical matter, would be dispositive of the interests of non-party class members or which

16   would substantially impair their ability to protect their interests; and

17                  c.      Honda has acted or refused to act on grounds generally applicable to the

18   proposed class, thereby making appropriate final and injunctive relief with respect to the

19   members of the proposed class as a whole.

20                  **VII.  TOLLING OF THE STATUTE OF LIMITATIONS**

21          68.     <u>Discovery Rule</u>.  Plaintiff's claims accrued upon discovery that the

22   HandsFreeLink™ system  installed in his vehicle was defective in that it does not reliably switch

23   off when not in use, and when stuck "on" creates a constant and substantial parasitic current

24   drain on the electric system, which in turn leads to drained and dead batteries and premature

25   failure of other essential electrical components.  Plaintiff and class members did not know of this

26   defect at the time of purchase.  Moreover, the nature of this defect in the HandsFreeLink™

CLASS ACTION COMPLAINT - 31

system makes it extremely difficult—if not impossible—to discover the defect, let alone discover it within the specified limitation period.  Even after encountering this defect, Plaintiff and class members had no reason to suspect the defect resided in the HandsFreeLink™ system itself, because the defect manifests as a problem with the battery or other electrical components alone. This causes the defect to appear unrelated to the HandsFreeLink™ system.  The defect can also be hidden when a drained battery triggers a system reset.  The fact that Honda needed to issue multiple internal technical service bulletins confirms how difficult it is to diagnose this defect. Further, even class members who had their defective HandsFreeLink™ system replaced with a new, but equally defective HandsFreeLink™ system, could not know that the replacement unit presented the same defect and safety hazards.  Therefore, the discovery rule tolls any statutes of limitations.

69.     Active Concealment Tolling.  Any statutes of limitations are tolled by Honda's knowing and active concealment of the fact that the HandsFreeLink™ systems suffered from an inherent defect.  Honda had a duty to disclose this defect and its consequent performance and safety problems to Plaintiff and class members, because Honda had knowledge of this defect and the defect was not known to nor easily discoverable by Plaintiff and class members.  Honda also had a duty to disclose this defect because it creates a safety hazard and directly contradicts representations made by Honda.

70.     Despite its affirmative duty to disclose the nature and existence of this defect, Honda kept Plaintiff and class members ignorant of vital facts essential to the pursuit of their claims.  Honda did not disclose the defect to Plaintiff or class members.  Honda further represented that the vehicles and their HandsFreeLink™ systems were reliable and safe for ordinary use, while making it appear that any defective HandsFreeLink™ units were unique cases that were 'fixed' prior to the expiration of any statute of limitations by replacing them with other, equally defective HandsFreeLink™ units, and similarly by replacing any dead batteries or other failed electrical components.  The complete details of Honda's efforts to conceal its

1    unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and

2    class members, and await discovery.

3            71.    Due to no fault or lack of diligence on their part, Plaintiff and class members

4    could not reasonably have discovered the fact that the HandsFreeLink™ system in their vehicles

5    is defective during the limitations period.  Once Plaintiff did discover the defect, he exercised

6    due diligence within a reasonable time by thoroughly investigating the situation, retaining

7    counsel, and pursuing his claims.  All applicable statutes of limitation are therefore tolled by

8    Honda's fraudulent concealment.

9            72.    Equitable Tolling.  Honda took active steps to conceal the fact that it wrongfully,

10   improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased

11   Acuras with defective HandsFreeLink™ systems.  The complete details of Honda's efforts to

12   conceal its above-described unlawful conduct are in its possession, custody, and control, to the

13   exclusion of Plaintiffs and class members, and await discovery.  However, Honda's failure to

14   disclose and active concealment of the defect amounts to bad faith and deception.   Honda also

15   made false assurances to Plaintiff and class members regarding the luxury, performance, and

16   safety of Acuras equipped with HandsFreeLink™ systems, regarding warranty coverage, and

17   regarding any repairs and replacements of the HandsFreeLink™ unit and other compromised

18   electrical components which appeared to be 'fixes' but in fact were attempts to gloss over the

19   problem.  When Plaintiff learned about this material information, he exercised due diligence by

20   thoroughly investigating the situation, retaining counsel, and pursuing his claims.  Therefore, any

21   statutes of limitation ought to be equitably tolled.

22           73.    Estoppel.  Honda was and is under a continuous duty to disclose to Plaintiff and

23   all Class members the true character, quality, and nature of the HandsFreeLink™ system

24   installed in their vehicles.  This defect is a material fact that is not apparent to buyers and not

25   easily discoverable; this defect is a safety issue that can lead to substantial electrical failure, even

26   when the car is on the road.  If buyers were aware of this defect and its deleterious effect on the

CLASS ACTION COMPLAINT - 33

car's value, safety, and performance, then they either would not have purchased the vehicle or would have paid substantially less for the vehicle.  Honda's own internal technical service bulletins reveal Honda was aware of this defect and the performance and safety problems it created.   Honda had a duty to disclose this defect to Plaintiff and class members.

74.    At all relevant times, and continuing to this day, Honda knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the HandsFreeLink™ systems installed in Plaintiff's and class members' vehicles.  The complete details of Honda's efforts to conceal its unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and class members, and await discovery. However, Honda represented that the vehicles and their HandsFreeLink™ systems were reliable and safe for ordinary use.  Honda represented that defects would be covered by Plaintiff's and class members' warranties.  Honda also made it appear that any defective HandsFreeLink™ units were unique cases that were 'fixed' prior to the expiration of any statute of limitations by replacing them with other, equally defective HandsFreeLink™ units, and similarly represented that any other problems were 'fixed' by replacing any dead batteries or other failed electrical components.

75.    Plaintiff and class members reasonably relied upon Honda's affirmative misrepresentations and knowing, affirmative, and active concealment.  Plaintiff and class members had no reason to question Honda's representations.  Plaintiff and class members had no reason to suspect the source of their problems was a defect in the HandsFreeLink™ unit, particularly as the defect manifested itself only through the failure of other electrical components and could hide itself by triggering a system 'reset.'

76.    Once Plaintiff discovered these representations were false, he exercised due diligence within a reasonable time by thoroughly investigating the situation, retaining counsel, and pursuing his claims.

CLASS ACTION COMPLAINT - 34

77.     Honda is therefore estopped from relying upon any statutes of limitation in defense of this action.

## VIII.  CAUSES OF ACTION ON BEHALF OF THE NATIONAL CLASS

### COUNT I
### VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
#### (CAL. CIV. CODE § 1750, *et seq.*)

78.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

79.     Plaintiff brings this claim on behalf of himself and the proposed national class.

80.     California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770.

81.     Class members' vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

82.     Plaintiff and the other class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other class members, and Honda are "persons" as defined in Cal. Civ. Code § 1761(c).

83.     As alleged herein, Honda made misleading representations and omissions concerning the benefits, performance, and safety of class members' vehicles, including the HandsFreeLink™ system.

84.     In purchasing or leasing their vehicles, Plaintiff and other class members were deceived by Honda's failure to disclose its knowledge of the defect in its HandsFreeLink™ system, which exerts a parasitic electric drain even when the vehicle's ignition switch is off. Honda concealed the hidden nature of the problem with the HandsFreeLink™ system, causing the problem to appear intermittent, isolated to particular and unique units, and unrelated to any systemic defect in the HandsFreeLink™ system.

CLASS ACTION COMPLAINT - 35

85.     Honda's conduct was and is in violation of the CLRA.  Honda's conduct violates at least the following enumerated CLRA provisions:

a.      Cal. Civ. Code § 1770(a)(5):  Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have;

b.      Cal Civ. Code § 1770(a)(7):  Representing that goods are of a particular standard, quality, or grade if they are of another;

c.      Cal. Civ. Code § 1770 (a)(9):  Advertising goods with intent not to sell them as advertised; and

d.      Cal Civ. Code § 1770 (a)(16):  Representing that goods have been supplied in accordance with a previous representation when they have not.

86.     Honda intentionally and knowingly misrepresented and omitted material facts regarding class members' vehicles and the HandsFreeLink™ system, with an intent to mislead Plaintiff and class members.

87.     In purchasing or leasing their vehicles, Plaintiff and other class members were deceived by Honda's failure to disclose its knowledge of the defect in its HandsFreeLink™ system and relied on its representations about the vehicle's performance and safety.  Plaintiff and other class members were also deceived by and relied on Honda's representation that all such defects would be covered by the standard warranty.

88.     In servicing their vehicles during and after their warranty periods, Honda continued this pattern of deception and public silence by failing to disclose its knowledge of the defect and representing that any problems were 'fixed.'  Honda glossed over and suppressed information about the defect by merely replacing failed batteries or other electrical components during the warranty period, rather than identifying the true source of the defect, making it appear the problems were 'fixed.'  Similarly, Honda made it appear problems were 'fixed' by replacing HandsFreeLink™ units with equally defective units, which in reality perpetuated the problem and made it appear any defect was limited to unique, isolated cases.

CLASS ACTION COMPLAINT - 36

89.   This pattern of deception and public silence allowed Honda to charge a premium price for these vehicles.   It also allowed Honda to evade their contractual obligations under their warranty.

90.   Plaintiff and other class members had no way of knowing that Honda's representations, on which they relied, were false, misleading, and incomplete, and no way of knowing the true nature of the HandsFreeLink™ system.  As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its HandsFreeLink™ system.  Plaintiff and other class members did not, and could not, unravel Honda's deception on their own.

91.   Honda knew or should have known its conduct violated the CLRA.

92.   Honda owed Plaintiff and the class members a duty to disclose the truth about its faulty HandsFreeLink™ system because the defect created a safety hazard and Honda:

a.   Possessed exclusive knowledge of the defect in the HandsFreeLink™ system, which caused parasitic electricity drain that would repeatedly deplete the car's battery and other essential electric components;

b.   Intentionally concealed the foregoing from Plaintiff and class members; and/or

c.   Made incomplete and contrary representations in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, failing to warn the public or to publicly admit that the HandsFreeLink™ system was defective.

93.   Honda had a duty to disclose that the HandsFreeLink™ system in class members' vehicles was defective because the defect created an unreasonable safety risk that would have been material to a reasonable consumer, and Plaintiff and the other class members relied on Honda's material misrepresentations and omissions regarding the features of the their vehicles and the HandsFreeLink™ system.

CLASS ACTION COMPLAINT - 37

94.     Honda's conduct proximately caused injuries to Plaintiff and the other class members.

95.     Plaintiff and the other class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other class members incurred costs related the parasitic drain caused by the defective HandsFreeLink™ system, including the costs of repair and replacement of electrical components and service costs.  Plaintiff and the other class members also overpaid for their vehicles, which have diminished in value due to the defective HandsFreeLink™ system.

96.     Honda's violations cause continuing injuries to Plaintiff and other class members. Honda's unlawful acts and practices complained of herein affect the public interest.

97.     Honda knew of the defective design and/or manufacture of the HandsFreeLink™ system, and that the vehicles were materially compromised by the defect.

98.     The facts concealed and omitted by Honda from Plaintiff and other class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase an Acura or pay a lower price.  Had Plaintiff and the other class members known about the defective nature of the HandsFreeLink™ systems, they would not have purchased the vehicles or would not have paid the prices they paid.

99.     Pursuant to CLRA § 1780(a), Plaintiff seeks an order enjoining Honda from engaging in the methods, acts, or practices alleged herein, including further concealment of the defect in the HandsFreeLink™ unit and denial of warranty coverage for repairs related to that defect.

100.     Plaintiff sent out a notice letter on March 1, 2017.

101.     Pursuant to CLRA § 1782, if Defendant does not rectify its conduct within 30 days, Plaintiff intends to amend this Complaint to add claims under the CLRA for:

        a.     Actual damages;

CLASS ACTION COMPLAINT - 38

1         b.     Restitution of money to Plaintiff and Class members, and the general

2    public;

3         c.     Punitive damages;

4         d.     An additional award of up to $5,000 to each Plaintiff and any Class

5    member who is a "senior citizen";

6         e.     Attorneys' fees and costs; and

7         f.     Other relief that this Court deems proper.

**COUNT II**
**VIOLATIONS OF CALIFORNIA'S UNFAIR BUSINESS PRACTICES ACT**
**(CAL. BUS. & PROF. CODE § 17200, *et seq.*)**

102.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

103.    Plaintiffs bring this claim on behalf of the proposed national class.

104.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

105.    Honda's conduct, as described herein, was and is in violation of the UCL. Honda's conduct violates the UCL in at least the following ways:

     a.     By failing to disclose that the HandsFreeLink™ system is defective and prone to create a continuous and substantial parasitic electricity drain;

     b.     By selling and leasing vehicles with defective HandsFreeLink™ systems without providing special warranty coverage for the defect;

     c.     By knowingly and intentionally concealing from Plaintiff and the other class members that the HandsFreeLink™ system is defective;

     d.     By marketing the vehicles as safe, convenient, and defect free, with cutting-edge technology, all while knowing of the defective HandsFreeLink™ system; and

CLASS ACTION COMPLAINT - 39

e.      By violating other California laws, including California consumer protection laws.

106.    Honda intentionally and knowingly misrepresented and omitted material facts regarding the vehicles and the HandsFreeLink™ system with the intent to mislead Plaintiff and the other class members.

107.    In purchasing or leasing their vehicles, Plaintiff and the other class members were deceived by Honda's failure to disclose the defect related to the HandsFreeLink™ system and by Honda's representation that all such defects would be covered by the standard warranty.  In servicing their vehicles during and after their warranty periods, Plaintiff and class members were further deceived by Honda's continued pattern of deception and public silence, and by Honda's representation that any problems were unique, isolated incidents that were 'fixed' either by replacing HandsFreeLink™ units with equally defective units or by replacing batteries and other electrical components compromised by the defective HandsFreeLink™ units.

108.    Plaintiff and the other class members reasonably relied upon Honda's false misrepresentations and omissions. They had no way of knowing that Honda's representations were false, misleading, and incomplete. As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its HandsFreeLink™ system. Plaintiff and the other class members did not, and could not, unravel Honda's deception on their own.

109.    Honda knew or should have known that its conduct violated the UCL.

110.    Honda owed Plaintiff and the other class members a duty to disclose the truth about its HandsFreeLink™ system because the defect created a safety hazard and Honda:

a.      Possessed exclusive knowledge of the defect in the HandsFreeLink™ system;

b.      Intentionally concealed the foregoing from Plaintiff and the other class members; and/or

c.     Made incomplete representations by failing to warn the public or to publicly admit that the HandsFreeLink™ system was defective.

111.   Honda had a duty to disclose that the HandsFreeLink™ system in the vehicles was defective because Plaintiff and the other class members relied on Honda's material misrepresentations and omissions.

112.   Honda's conduct proximately caused injuries to Plaintiff and the other class members.

113.   Plaintiff and the other class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other class members incurred costs related the parasitic drain caused by the defect, including replacement of electrical components and service costs, and overpaid for their vehicles, which have suffered a diminution in value.

114.   Honda's violations cause continuing injuries to Plaintiff and class members. Honda's unlawful acts and practices complained of herein affect the public interest.

115.   Honda's misrepresentations and omissions alleged herein caused Plaintiff and the other class members to purchase their vehicles. Absent those misrepresentations and omissions, Plaintiff and the other class members would not have purchased these vehicles, would not have purchased the vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain defective HandsFreeLink™ systems.

116.   Accordingly, Plaintiff and the other class members have suffered injury-in-fact, including lost money or property, as a result of Honda's misrepresentations and omissions.

117.   Plaintiff request that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and class members any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief as may be appropriate.

CLASS ACTION COMPLAINT - 41

**COUNT III**
**FRAUD BY CONCEALMENT (BASED ON CALIFORNIA LAW)**

118.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

119.    Plaintiff brings this claim on behalf of the proposed national class.

120.    Honda intentionally concealed that the HandsFreeLink™ system is defective, and prone to create a parasitic electricity drain that strains the electrical system and repeatedly depletes the car's battery, leaving owners with cars that will not reliably start and cars that experience premature battery death and damage to other components in the electric system, even under ordinary use.  Honda concealed the fact that once the HandsFreeLink™ system defect compromises the battery, the system "resets," hiding the problem until the system becomes stuck again.

121.    Honda further affirmatively misrepresented to Plaintiff and other class members in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the vehicles had no significant defects, and that the HandsFreeLink™ system was a safety feature that was reliable and would perform and operate properly.

122.    Honda knew about the defect in the HandsFreeLink™ system when it made these representations; Plaintiff and other class members did not know about this defect.

123.    Plaintiff and the other class members purchased vehicles in which the defective HandsFreeLink™ system was installed.

124.    Honda had a duty to disclose that the HandsFreeLink™ system is defective because the defect creates a safety hazard and Plaintiff and the other class members relied on Honda's material representations.

125.    As alleged herein, at all relevant times, Honda held out the vehicles to be free from defects such as the defect in the HandsFreeLink™ system. Honda touted and continues to

tout the many benefits and advantages of the HandsFreeLink™ system, but nonetheless failed to disclose important facts related to the defect. This made Honda's other disclosures about the HandsFreeLink™ system deceptive.

126.    The truth about the defective HandsFreeLink™ system was known only to Honda; Plaintiff and the other class members did not know of these facts and Honda actively concealed these facts from Plaintiff and class members.

127.    Plaintiff and the other class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete. As consumers, Plaintiff and class members did not, and could not, unravel Honda's deception on their own. Rather, Honda intended to deceive Plaintiff and class members by concealing the true facts about the HandsFreeLink™ systems.

128.    Honda's false representations and omissions were material to consumers because they concerned qualities of the vehicles that played a significant role in the value of the vehicles, and because the defect constitutes an unreasonable safety risk that would be material to a reasonable consumer.

129.    Honda had a duty to disclose the HandsFreeLink™ system defect because the truth was known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiff or class members.

130.    Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality, and performance of the vehicle.

131.    Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defect in the HandsFreeLink™ system as set forth herein. These omitted and concealed facts were material because they directly

CLASS ACTION COMPLAINT - 43

1    impacted the value of the vehicles purchased by Plaintiff and class members, and because the

2    defect constitutes an unreasonable safety risk that would be material to a reasonable consumer.

3         132.    Honda has still not made full and adequate disclosures, and continues to defraud

4    Plaintiff and class members by concealing material information about the defect in the

5    HandsFreeLink™ system.

6         133.    Honda concealed and continues to conceal this information in order to induce

7    consumers to purchase the class vehicles at a premium price, and also to mislead owners during

8    the warranty period to avoid having to fulfill its contractual obligations under the warranty.

9         134.    Plaintiff and class members were unaware of the omitted material facts referenced

10   herein, and they would not have acted as they did if they had known of the concealed facts, in

11   that they would not have purchased or paid as much for cars with faulty technology, and would

12   have taken other affirmative steps in light of the information concealed from them. Plaintiff's

13   and class members' actions were justified. Honda was in exclusive control of the material facts,

14   and the facts were not generally known to the public, Plaintiff, or class members.

15        135.    Because of the concealment and/or suppression of facts, Plaintiff and class

16   members sustained damage because they own or owned vehicles that diminished in value as a

17   result of Honda's concealment of the true quality of the HandsFreeLink™ systems. Had Plaintiff

18   and class members been aware of the defect in the HandsFreeLink™ systems and Honda's

19   disregard for the truth, Plaintiff and class members would have paid less for their vehicles or

20   would not have purchased them at all.

21        136.    The value of Plaintiff's and Class members' vehicles has diminished as a result of

22   Honda's fraudulent concealment of the defective HandsFreeLink™ system, which has made any

23   reasonable consumer reluctant to purchase any of the vehicles, let alone pay what otherwise

24   would have been fair market value for the vehicles.

25

26

CLASS ACTION COMPLAINT - 44

137.     Plaintiff and class members were deprived of safe and reliable transportation because of Honda's concealment of the defect, which poses an unreasonable safety risk, and renders their vehicles unsuited for ordinary use.

138.     Accordingly, Honda is liable to Plaintiff and class members for damages in an amount to be proven at trial.

139.     Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and class members' rights and the representations that Honda made to them, in order to enrich Honda. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**
**(CAL. COM. CODE § 2313, *et seq.*; CAL. CIVIL CODE § 1791.2, *et seq.*)**

140.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

141.     Plaintiff brings this claim on behalf of the proposed national class.

142.     As an express warrantor and manufacturer and merchant, Honda had certain obligations under Cal. Com. Code § 2313, *et seq*. and Cal. Civ. Code § 1791.2, *et seq*. to conform Plaintiff's and class members' vehicles to their express warranties.

143.     Honda marketed the vehicles as safe and reliable luxury vehicles. These representations formed the basis of the bargain in Plaintiff's and class members' decisions to purchase the vehicles.  Plaintiff and class members reasonably relied on these representations, and further relied on Honda's representations that such defects would be covered by the 4 year/ 50,000 mile warranty.

144.    In connection with the purchase or lease of each of the vehicles, Honda provided warranty coverage for 4 years or 50,000 miles, which obliges Honda to repair or replace any part that is defective under normal use free of charge.

145.    Honda's warranty formed a basis of the bargain that was reached when Plaintiff and other class members purchased their vehicles.

146.    Plaintiff and other class members owned vehicles with defective HandsFreeLink™ units within the warranty period but had no knowledge of the existence of the defect, which was known and concealed by Honda.

147.    Despite the existence of the warranty, Honda failed to inform Plaintiff and other class members that the vehicles contained the defective HandsFreeLink™ units during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement to Plaintiff and other class members.

148.    Honda breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

149.    Honda knew about the defect in the HandsFreeLink™ unit, meaning Honda could have cured its breach of warranty if it chose.

150.    Instead, Honda concealed the defect and, on information and belief, has refused to repair or replace the HandsFreeLink™ unit free of charge outside of the warranty periods despite the defect's existence at the time of sale or lease of the vehicles.

151.    Any attempt by Honda to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Honda's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect and knowing consumers would be unable to readily identify the defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and other class members. Among other things, Plaintiff and other class members had no meaningful choice in determining these time limitations, the terms of

1   which unreasonably favored Honda. A gross disparity in bargaining power existed between

2   Honda and other class members, and Honda knew that the HandsFreeLink™ units were

3   defective at the time of sale.

4       152.    Plaintiff and class members have complied with all obligations under the

5   warranty, or otherwise have been excused from performance of the obligations as a result of

6   Honda's conduct described herein.

7       153.    Further, the limited warranty promising to repair and/or correct a manufacturing

8   defect fails in its essential purpose because the contractual remedy is insufficient to make

9   Plaintiff and other class members whole: the replacement part used by Honda contains the same

10  defect.  Affording Honda a reasonable opportunity to cure the breach of written warranties

11  therefore would be unnecessary and futile.

12      154.    Accordingly, Honda is liable to Plaintiff and class members for damages in an

13  amount to be proven at trial.

14                          **COUNT V**
15          **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
                    **(CAL. COM. CODE § 2314)**
16
        155.    Plaintiff incorporates by reference all preceding allegations as though fully set
17
    forth herein.
18
        156.    Plaintiff brings this claim on behalf of the proposed national class.
19
        157.    Honda is and was at all relevant times a merchant with respect to motor vehicles
20
    under Cal. Com. Code § 2104.
21
        158.    A warranty that Plaintiff's and class members' vehicles were in merchantable
22
    condition was implied by law in the instant transaction under Cal. Com. Code § 2314.
23
        159.    Honda marketed the vehicles as safe and reliable luxury vehicles. These
24
    representations formed the basis of the bargain in Plaintiff and class members' decisions to
25
    purchase the vehicles.
26

CLASS ACTION COMPLAINT - 47

160.    Plaintiff and other class members purchased or leased the vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the vehicles.

161.    Plaintiff and other class members are intended third-party beneficiaries of contracts between Honda and its dealers, and specifically, of its implied warranties.

162.    Honda knew or had reason to know of the specific use for which the vehicles were purchased or leased.

163.    Because of the latent defect in the HandsFreeLink™ system, the vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.  Vehicles that do not reliably start and that have batteries and other essential electrical components that are prone to failing—and failing even while the car is in use—are unsafe and cannot be said to be in merchantable condition.

164.    Honda knew about the defect in the HandsFreeLink™ unit, allowing Honda to cure their breach of its implied warranty of merchantability if it chose.

165.    Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Honda's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect and knowing consumers would be unable to readily identify the defect.  The time limits contained in Honda's warranty periods are also unconscionable and inadequate to protect Plaintiff and other class members.  Among other things, Plaintiff and other class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda.  A gross disparity in bargaining power existed between Honda and other class members, and Honda knew of the defect at the time of sale.

166.    Accordingly, Honda is liable to Plaintiff and class members for damages in an amount to be proven at trial.

CLASS ACTION COMPLAINT - 48

**COUNT VI**
**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq.*)**

167.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

168.    Plaintiff brings this claim on behalf of the proposed national class.

169.    Plaintiff satisfies the Magnuson-Moss Warranty Act ("MMWA") jurisdictional requirement because he alleges diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

170.    Plaintiff and other class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

171.    Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

172.    Plaintiff's and class members' vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

173.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

174.    Defendant provided Plaintiff and other class members with an express warranty, which is covered under 15 U.S.C. § 2301(6).

175.    Plaintiff's and class members' implied warranties are covered under 15 U.S.C. § 2301(7).

176.    Honda breached these warranties by misrepresenting the standard, quality, or grade of the vehicles and failing to disclose and fraudulently concealing the existence of the defect in the HandsFreeLink™ units.

177.    Through their issuance of internal Technical Service Bulletins, Honda acknowledged that the vehicles are not of the standard, quality, or grade that it represented.

1       178.    Plaintiff and other class members have had sufficient direct dealings with Honda

2    or its agents (dealerships) to establish privity of contract between Honda, on the one hand, and

3    Plaintiff and other class members on the other hand.

4       179.    Nonetheless, privity is not required here because Plaintiff and other class

5    members are intended third-party beneficiaries of contracts between Honda and its dealers, and

6    specifically, of its implied warranties.

7       180.    Plaintiff and class members have complied with all obligations under the

8    warranty, or otherwise have been excused from performance of the obligations as a result of

9    Honda's conduct described herein.  Affording Honda a reasonable opportunity to cure the breach

10   of written warranties would be unnecessary and futile.  Honda knew about the existence of this

11   defect prior to and during the warranty period.  Under the circumstances, the remedies available

12   under any informal settlement procedure would be inadequate and any requirement that Plaintiff

13   and class members resort to an informal dispute resolution procedure and/or afford Honda a

14   reasonable opportunity to cure their breach of warranties is excused and thereby deemed

15   satisfied.  Further, the limited warranty promising to repair and/or correct a manufacturing defect

16   fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and

17   other class members whole: the replacement part used by Honda contains the same defect.

18      181.    The amount in controversy of Plaintiff and class members' individual claims

19   meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of

20   $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in

21   this lawsuit.

22      182.    Accordingly, Honda is liable to Plaintiff and class members for damages in an

23   amount to be proven at trial.

24

25

26

CLASS ACTION COMPLAINT - 50

1

**COUNT VII**
**UNJUST ENRICHMENT (BASED ON CALIFORNIA LAW)**

2

183.    Plaintiff incorporates by reference all preceding allegations as though fully set

3

forth herein.

4

184.    Plaintiff brings this claim on behalf of the proposed national class.

5

185.    As a result of its unlawful, fraudulent, and misleading representations and

6

omissions with respect to the defect, Honda benefitted and was enriched at the expense of

7

Plaintiff and class members. Honda generated revenue from the unlawful conduct described

8

herein, insofar as it was able to entice Plaintiff and class members to purchase these vehicles,

9

charge them a premium price, and thereafter eschew its contractual obligations during the

10

warranty period.

11

186.    Honda has knowledge and appreciation of these benefits, which were conferred

12

upon it by and at the expense of Plaintiffs and class members—who are left with vehicles that

13

are less safe and less valuable than comparable vehicle with functioning, non-defective hands-

14

free interfaces

15

187.    Honda voluntarily accepted and retained these benefits.

16

188.    The circumstances, as described herein, are such that it would be unjust and

17

inequitable for Honda to retain the benefit without restitution of the value thereof to Plaintiff and

18

class members.

19

189.    Plaintiff and class members are entitled to restitution in the amount of Honda's

20

benefits, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct

21

as alleged herein.

22

23

24

25

26

CLASS ACTION COMPLAINT - 51

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## XII.  CAUSES OF ACTION ON BEHALF OF THE ALTERNATE CLASS

### COUNT I
### VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT—NON-PER SE UNFAIR BUSINESS PRACTICES
#### (RCW 19.86 *et seq.*)

201.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

202.    Plaintiff brings this claim on behalf of the proposed Washington class.

203.    Honda is a "person" within the meaning of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010(1), and conducts "trade" and "commerce" within the meaning of RCW 19.86.010(2).

204.    Plaintiff and other class members are "persons" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1).

205.    Honda has engaged in unfair acts or practices.  Honda has long known that its HandsFreeLink™ units have a propensity to become locked in the "on" position and exert a parasitic current drain on the vehicle's engine, compromising the vehicle's battery and other electrical components, which impairs the car's performance and poses a serious safety risk. Honda systematically concealed and failed to disclose these facts to Plaintiff and class members.

206.    Honda engaged in unfair acts or practices by engaging in a pattern and practice of: (i) failing to disclose that Plaintiffs' and class members' vehicles, and the HandsFreeLink™ system in the vehicles, were not of a particular standard, quality, or grade; (ii) failing to disclose, at and after the time of purchase or lease and repair, any and all known material defects or material nonconformity of the vehicles, including the defect in the HandsFreeLink™ systems; (iii) failing to disclose at the time of purchase or lease that the vehicles, including the HandsFreeLink™ systems, were not in good working order, were defective, were not fit for their intended, ordinary purpose, and created substantial performance and safety issues; (iv) failing to give adequate warnings and notices regarding the use, defects, and problems with the vehicles'

CLASS ACTION COMPLAINT - 52

1    HandsFreeLink™ systems to customers and consumers who purchased and/or leased the

2    vehicles, even though Honda  possessed knowledge of the inherent defect in the

3    HandsFreeLink™ systems prior to and at the time of purchase; (v) failing to disclose, either

4    through warnings or recall notices, and/or actively concealing, the fact that the HandsFreeLink™

5    systems were defective, even though Honda knew about the defects as early as July 2005, if not

6    before; (vi) representing that defects in the vehicles would be covered under its warranty

7    program, while systematically replacing the HandsFreeLink™ units with equally defective

8    HandsFreeLink™ units, only repairing/replacing the symptoms of the defect (the failed batteries,

9    alternators, and other essential electrical components), and/or depriving purchasers who would

10   have come in during their warranty periods of the opportunity to do so; and (vii) causing

11   Plaintiffs and class members to expend sums of money to (repeatedly) service, repair and/or

12   replace their HandsFreeLink™ units and other essential electrical components, such as batteries

13   and alternators, despite Honda's knowledge of the defect.

14          207.    Honda's systematic practice of failing to disclose the defect in the

15   HandsFreeLink™ systems, failing to give adequate warnings about defects in the

16   HandsFreeLink™ systems, and failing to repair the HandsFreeLink™ systems is unfair because

17   these acts or practices offend public policy established by statutes, regulations, the common law

18   or otherwise, including, but not limited to, the public policy established by RCW 46.70.005,

19   RCW 46.70.101, and RCW 46.70.180.

20          208.    Honda's systematic practice of failing to disclose the defect in the

21   HandsFreeLink™ systems, failing to give adequate warnings about defects in the

22   HandsFreeLink™ systems, and failing to repair the HandsFreeLink™ systems is unfair because

23   this practice allowed Honda to continue to charge consumers a premium price for these vehicles

24   and the HandsFreeLink™ systems.  This practice also misled owners during the warranty period

25   and allowed Honda to avoid having to fulfill its contractual obligations under the warranty.

26

CLASS ACTION COMPLAINT - 53

209.    Honda's systematic practice of failing to disclose the defect in the HandsFreeLink™ systems, failing to give adequate warnings regarding the defects in the HandsFreeLink™ systems, and failing to repair the HandsFreeLink™ systems is unfair because these acts or practices: (1) cause substantial financial injury to Plaintiffs and class members; (2) are not outweighed by any countervailing benefits to consumers or competitors, and create an unreasonable safety risk for Plaintiffs, class members, and other members of the public; and (3) are not reasonably avoidable by consumers.

210.    Honda's unfair acts and practices affect the public interest, because these acts and practices have injured and have the capacity to injure other persons.  Honda's unfair acts and practices also offend the public policy laid out in RCW 46.70.005, RCW 46.70.101, and RCW 46.70.180, and that statute specifically provides: "Any violation of this chapter is deemed to affect the public interest and constitutes a violation of chapter 19.86 RCW" in RCW 46.70.310.

211.    These unfair acts and practices were committed in the general course of Honda's business.

212.    As a direct and proximate result of Honda's unfair acts or practices, Plaintiff and class members suffered injury in fact and lost money.  Honda's unfair or deceptive acts or practices resulted in Plaintiff and the class: (i) expending out-of-pocket monies to service their vehicles, including for repairs or replacements of batteries, alternators, and other electrical components drained or strained by the defective HandsFreeLink™ systems, and/or replacement of the HandsFreeLink™ systems or disconnection of HandsFreeLink™ systems, as well as loss of use while their vehicles were being serviced; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the vehicles as warranted and the vehicles containing the defect; and (iii) the diminution of resale value of the vehicles resulting from the defect.

CLASS ACTION COMPLAINT - 54

213.     Plaintiff and class members are therefore entitled to legal relief against Honda, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

214.     Plaintiff and the class are also entitled to injunctive relief in the form of an order prohibiting Honda from engaging in the alleged misconduct and such other equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the class members, of all or part of the ill-gotten profits Honda received from the failure to disclose defect in the HandsFreeLink™ system.

## COUNT II
## VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT—NON-PER SE DECEPTIVE BUSINESS PRACTICES
### (RCW § 19.86 *et seq.*)

215.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

216.     Plaintiff brings this claim on behalf of the proposed Washington class.

217.     Honda is a "person" within the meaning of the CPA, RCW 19.86.010(1), and conducts "trade" and "commerce" within the meaning of RCW 19.86.010(2).

218.     Plaintiff and other class members are "persons" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1).

219.     Honda has engaged in deceptive acts or practices.  Honda has long known that its HandsFreeLink™ units have a propensity to become locked in the "on" position and exert a parasitic current drain on the vehicle's engine, compromising the vehicle's battery and other electrical components, which impairs the car's performance and poses a serious safety risk. Honda systematically concealed and failed to disclose these facts to Plaintiff and class members.

220.     Honda further engaged in deceptive acts or practices by (i) failing to disclose that Plaintiffs' and class members' vehicles, and the HandsFreeLink™ system in the vehicles, were not of a particular standard, quality, or grade; (ii) failing to disclose, at and after the time of

purchase or lease and repair, any and all known material defects or material nonconformity of the vehicles, including the defect in the HandsFreeLink™ systems; (iii) failing to disclose at the time of purchase or lease that the vehicles, including the HandsFreeLink™ systems, were not in good working order, were defective, were not fit for their intended, ordinary purpose, and created substantial performance and safety issues; (iv) failing to give adequate warnings and notices regarding the use, defects, and problems with the vehicles' HandsFreeLink™ systems to customers and consumers who purchased and/or leased the vehicles, even though Honda possessed knowledge of the inherent defect in the HandsFreeLink™ systems prior to and at the time of purchase; (v) failing to disclose, either through warnings or recall notices, and/or actively concealing, the fact that the HandsFreeLink™ systems were defective, even though Honda knew about the defects as early as July 2005, if not before; (vi) representing that defects in the vehicles would be covered under its warranty program, while systematically replacing the HandsFreeLink™ units with equally defective HandsFreeLink™ units, only addressing the symptoms of the defect (the failed batteries, alternators, and other essential electrical components), and/or depriving purchasers who would have come in during their warranty periods of the opportunity to do so; and (vii) causing Plaintiffs and class members to expend sums of money to (repeatedly) service, repair and/or replace their HandsFreeLink™ units and other essential electrical components, such as batteries and alternators, despite Honda's knowledge of the defect.

221. Honda's deceptive acts or practices repeatedly occurred in the general course of Honda's trade or business and were and are capable of deceiving a substantial portion of the public. The acts complained of herein are ongoing.

222. Honda's deceptive acts and practices affect the public interest, because these acts and practices have injured and have the capacity to injure other persons. Honda's deceptive acts and practices also offend the public policy laid out in RCW 46.70.005, RCW 46.70.101, and RCW 46.70.180, and that statute specifically provides: "Any violation of this chapter is deemed

1    to affect the public interest and constitutes a violation of chapter 19.86 RCW" in

2    RCW 46.70.310.

3         223.    These deceptive acts and practices were committed in the general course of

4    Honda's business.

5         224.    Honda's systematic practice of failing to disclose the defect in the

6    HandsFreeLink™ systems, failing to give adequate warnings about defects in the

7    HandsFreeLink™ systems, and failing to repair the HandsFreeLink™ systems is deceptive,

8    because this practice allowed Honda to continue to charge consumers a premium price for these

9    vehicles and the HandsFreeLink™ systems.  This practice also misled owners during the

10   warranty period and allowed Honda to avoid having to fulfill its contractual obligations under the

11   warranty.

12        225.    Honda's systematic practice of failing to disclose the defect in the

13   HandsFreeLink™ systems, failing to give adequate warnings regarding the defects in the

14   HandsFreeLink™ systems, and failing to repair the HandsFreeLink™ systems is likely to

15   mislead a reasonable consumer.

16        226.    As a direct and proximate result of Honda's unfair acts or practices, Plaintiff and

17   class members suffered injury in fact and lost money.  Honda's unfair or deceptive acts or

18   practices resulted in Plaintiff and the class: (i) expending out-of-pocket monies to service their

19   vehicles, including for repairs or replacements of batteries, alternators, and other electrical

20   components drained or strained by the defective HandsFreeLink™ systems, and/or replacement

21   of the HandsFreeLink™ systems or disconnection of HandsFreeLink™ systems, and loss of use

22   while their vehicles were being serviced; (ii) the failure of consideration in connection with

23   and/or difference in value arising out of the variance between the vehicles as warranted and the

24   vehicles containing the defect; and (iii) the diminution of resale value of the vehicles resulting

25   from the defect.

26

CLASS ACTION COMPLAINT - 57

227.   Plaintiff and class members are therefore entitled to legal relief against Honda, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

228.   Plaintiff and the class are also entitled to injunctive relief in the form of an order prohibiting Honda from engaging in the alleged misconduct and such other equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the class members, of all or part of the ill-gotten profits Honda received from the failure to disclose the defect in the HandsFreeLink™ systems.

**COUNT III**
**BREACH OF EXPRESS WARRANTY (BASED ON WASHINGTON LAW)**

229.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

230.   Plaintiff brings this claim on behalf of the proposed Washington class.

231.   Honda provided Plaintiff and class members with the express warranties described herein, which became part of the basis of the bargain.  Accordingly, Honda's warranties are express warranties under Washington law.

232.   The parts affected by the defect, including the HandsFreeLink™ units, batteries and other essential electrical components which failed as a result of the defect in the HandsFreeLink™ units, were manufactured and distributed by Honda in the vehicles and are covered by the warranties Honda provided to Plaintiff and class members.

233.   Honda knew about these defects at or before the time of purchase.

234.   Honda marketed the vehicles as safe and reliable luxury vehicles.  These representations formed the basis of the bargain in Plaintiff and class members' decisions to purchase the vehicles.  Plaintiff and class members reasonably relied on Honda's express warranties described herein, which include its representations about the vehicle's performance

1    and safety (significantly, the HandsFreeLink™ system itself was advertised as a safety feature),

2    as well as its representation that all such defects would be covered by the standard warranty.

3    235.    In connection with the purchase or lease of each vehicle, Honda provided

4    warranty coverage for 4 years or 50,000 miles, which obliges Honda to repair or replace any part

5    that is defective under normal use free of charge.  Honda's warranty formed a basis of the

6    bargain that was reached when Plaintiff and other class members purchased their vehicles.

7    236.    Honda breached these warranties by selling and leasing vehicles with the

8    defective HandsFreeLink™ unit, which required repair or replacement within the applicable

9    warranty periods, and refusing to honor the warranties with free repairs or replacements during

10   the applicable warranty periods.  Honda did this by (1) concealing the defect in the

11   HandsFreeLink™ unit, which effectively prevented Plaintiff and class members from seeking

12   repair or replacement during the warranty period.  Honda also did this by (2) providing

13   incomplete coverage during the warranty period to those who did seek repairs or replacement by

14   (i) fixing only the symptoms of the defect (such as the failing battery or alternator), (ii) replacing

15   the HandsFreeLink™ unit itself with an equally defective HandsFreeLink™ unit, or

16   (iii) disconnecting the HandsFreeLink™ unit—all of which failed to fix the defect.  Honda

17   avoided its contractual obligations under the warranty by failing to disclose this defect.  Honda

18   deprived Plaintiff and class members of the benefits of the warranty for which they bargained,

19   wrongfully transferring the costs of repair or replacement to Plaintiff and class members.

20   237.    Honda further breached these warranties by not correcting the defect.  Although

21   Honda warranted that it would correct defects in materials and workmanship in the vehicles,

22   Honda instead elected to advise Acura dealers to replace HandsFreeLink™ units with identical

23   defective HandsFreeLink™ units and has not otherwise corrected the defect.  Honda failed and

24   refused to conform the HandsFreeLink™ units to the express warranty.

25   238.    Honda knew about the defect at issue in this litigation, meaning Honda could have

26   cured its breach of warranty if it chose. Honda also Honda received, on information and belief,

1    numerous consumer complaints and other notices from customers advising of the defect in the

2    HandsFreeLink™ systems.

3        239.    Instead, Honda concealed the defect and, on information and belief, has refused to

4    repair or replace the HandsFreeLink™ units and other essential electrical components

5    compromised by the defect outside of the warranty periods, despite the defect's existence at the

6    time of sale or lease of the vehicles.

7        240.    Plaintiff and class members complied with all obligations under the warranty, or

8    otherwise have been excused from performance of those obligations as a result of Honda's

9    conduct described herein.  Plaintiff notified Honda of the breach within a reasonable time or was

10   not required to do so, because affording Honda a reasonable opportunity to cure its breach of

11   written warranty would have been futile.  Honda had prior knowledge of the defect, chose to

12   conceal it, and failed to comply with its warranty obligations.  Honda's conduct voided any

13   attempt to disclaim liability for its actions.

14       241.    The limited warranty promising to repair and/or correct a manufacturing defect

15   fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and

16   other class members whole: the replacement part used by Honda contains the same defect, so

17   replacement under the warranty would not repair the defect.  Honda also knew of the defect

18   before and throughout the warranty period and chose to conceal it to avoid its contractual

19   obligations under the warranty, which constitutes unreasonable delay in repair.  Thus, the

20   warranty fails in its essential purpose.  Affording Honda a reasonable opportunity to cure the

21   breach of warranties therefore would be unnecessary and futile, and any time limitations as to the

22   defect are null and void.

23       242.    Any attempt by Honda to disclaim or limit these express warranties vis-à-vis

24   consumers is unconscionable and unenforceable under these circumstances.  Honda's warranty

25   limitation is unenforceable because it knowingly sold a defective product without informing

26   consumers about the defect.

CLASS ACTION COMPLAINT - 60

243.    The time limits contained in Honda's warranty period were also unconscionable and inadequate to protect Plaintiff and class members.  Among other things, Plaintiff and class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda.  A gross disparity in bargaining power exists between Honda and the class members, and Honda knew or should have known that the HandsFreeLink™ systems were defective at the time of sale.  Honda knew that the particular defect in the HandsFreeLink™ system would not be readily diagnosable by ordinary dealers—let alone owners—as evidenced by the internal Technical Service Bulletins Honda issued to its dealers.

244.    As a direct and proximate cause of Honda's breach, Plaintiff and the other class members bought or leased vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their vehicles suffered a diminution in value. Plaintiff and class members also incurred and will continue to incur costs for repair and replacement of defective HandsFreeLink™ units and damage resulting from the parasitic current draw exerted by these HandsFreeLink™ units on the vehicle's battery and other essential electrical components.

245.    Plaintiff and class members are entitled to legal and equitable relief against Honda, including damages, consequential damages, specific performance, attorney fees, costs of suit, and such further relief as the Court may deem proper.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(RCW 62A *et seq.*)**

246.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

247.    Plaintiff brings this claim on behalf of the proposed Washington class.

248.    Honda is and was at all relevant times a merchant with respect to the vehicles at issue in this case.

CLASS ACTION COMPLAINT - 61

249. Honda was and is in actual or constructive privity with Plaintiff and all class members.

   a.   Plaintiff and class members had and continue to have sufficient direct dealings with Honda and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract.  Honda's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the vehicles and have no rights under the warranty agreements provided with the vehicles.  The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the vehicles, i.e., Plaintiff and class members.

   b.   By extending express written warranties to end-user purchasers and lessees, Honda brought itself into privity with Plaintiff and class members.

   c.   Privity is not required to assert this claim because Plaintiff and class members are intended third-party beneficiaries of contracts between Honda and its dealers, franchisees, representatives, and agents.  Plaintiff and other class members purchased or leased the vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the vehicles.

250. At all relevant times, Washington law imposed upon Honda a duty that the HandsFreeLink™ systems installed in the vehicles be fit for the ordinary purposes for which HandsFreeLink™ systems are used and that they pass without objection in the trade under the contract description.

251. Honda has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

CLASS ACTION COMPLAINT - 62

252.     The HandsFreeLink™ systems were defective at the time the vehicles left Honda's possession.  Thus, the vehicles with the HandsFreeLink™ systems, when sold or leased and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose of providing safe and reliable transportation.  Vehicles that do not reliably start and that have batteries and other essential electrical components that are prone to failing—and failing even while the car is in use—are unsafe and cannot be said to be in merchantable condition.  They do not pass without objection in the trade under the contract description.

253.     Honda knew of this defect at the time the purchase and lease transactions occurred.

254.     The defect in the HandsFreeLink™ system is not reasonably apparent and cannot be readily discovered by consumers.

255.     By virtue of the conduct described herein, Honda breached the implied warranty of merchantability.

256.     Honda failed to inform Plaintiffs and class members of the defective condition of the HandsFreeLink™ systems.  The failure to warn Plaintiff and class members of this defective condition constitutes a further breach by Honda of the implied warranties of merchantability.

257.     Honda had actual knowledge of, and received timely notice regarding, the defect at issue in this litigation and, notwithstanding such notice, failed and refused to cure its breach of the implied warranty of merchantability.  In addition, Honda received, on information and belief, numerous consumer complaints and other notices from customers advising of the defect in the HandsFreeLink™ systems.

258.     Plaintiff and class members used the HandsFreeLink™ systems in a manner consistent with their intended, ordinary use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Honda or by operation of law in light of Honda's unconscionable conduct.

CLASS ACTION COMPLAINT - 63

259.     As a direct and proximate result of Honda's breach of warranties, Plaintiff and class members suffered economic damage, including loss attributable to the diminished value of their vehicles, loss of use of their vehicles and other tangible property, as well as the monies spent and to be spent to replace their HandsFreeLink™ units, and repair and/or replace their batteries and other electrical components compromised by the defect in the HandsFreeLink™ units.

260.     Plaintiff and class members are entitled to legal and equitable relief against Honda, including damages, consequential damages, specific performance, attorney fees, costs of suit, and such further relief as the Court may deem proper.

## COUNT V
## VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)

261.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

262.     Plaintiff brings this claim on behalf of the proposed Washington class.

263.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(d)(1), provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

264.     Plaintiff and class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

265.     Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

266.     Plaintiff's and class member's vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

CLASS ACTION COMPLAINT - 64

267.   Honda's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

268.   Honda breached these warranties as described in more detail above by:

a.   Extending a comprehensive 4-year/50,000 limited warranty and a 6-year/70,000 mile powertrain limited warranty with the purchase or lease of the vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

b.   Selling and leasing the vehicles with HandsFreeLink™ systems that were defective in material and workmanship, requiring repair or replacement within the warranty periods; and

c.   Refusing to honor the express warranties by  (1) concealing the defect in the HandsFreeLink™ unit, which effectively prevented Plaintiff and class members from seeking repair or replacement during the warranty period, and (2) providing incomplete coverage during the warranty period by (i) fixing only the symptoms of the defect (such as the failing battery or alternator), (ii) replacing the HandsFreeLink™ unit itself with an equally defective HandsFreeLink™ unit, or (iii) disconnecting the HandsFreeLink™ unit—all of which failed to fix the defect and effectively deprived Plaintiff and class members of the benefits of the warranty for which they bargained.

269.   Honda's breach of the express warranties deprived the Plaintiff and class members of the benefit of their bargain.

270.   Plaintiff and class members have had sufficient direct dealings with either Honda or it franchisees, representatives, and agents to establish any required privity of contract. Nonetheless, privity is not required here because Plaintiff and class members are intended third-party beneficiaries of contracts between Honda and its dealers, and specifically of Honda's express and implied warranties.  The dealers were not intended to be the ultimate consumers of

the vehicles and have no rights under the warranty agreements provided with the vehicles.  The warranty agreements were designed for and intended to benefit the consumers only.

271.    Plaintiff and class members have complied with all obligations under the warranty, or otherwise have been excused from performance of the obligations as a result of Honda's conduct described herein.

272.    Honda has been afforded reasonable opportunity to cure its breach of warranty, including when Plaintiff and class members brought their vehicles to a dealer for repair of the defective HandsFreeLink™ system and other essential electrical components compromised by the defect.  Nevertheless, Plaintiff was not required to afford Honda a reasonable opportunity to cure its breach of written warranty, because that would have been unnecessary and futile.  The limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and other class members whole: the replacement part used by Honda contains the same defect.  Further, Honda already knew of the defect and chose to conceal it and to fail to comply with its warranty obligations.

273.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

274.    As a direct and proximate cause of Honda's breach of written warranties, Plaintiff and class members sustained damages and other losses in an amount to be determined at trial.

275.    Plaintiff and class members are entitled to recover damages, consequential damages, specific performance, diminution in value of their vehicles, rescission, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

**COUNT VII**
**UNJUST ENRICHMENT (BASED ON WASHINGTON LAW)**

276.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

277.    Plaintiff brings this claim on behalf of the proposed Washington class.

278.    As a result of its unlawful, fraudulent, and misleading representations and omissions with respect to the defect, Honda benefitted and was enriched at the expense of Plaintiff and class members. Honda generated revenue from the unlawful conduct described herein, insofar as it was able to entice Plaintiff and class members to purchase these vehicles, charge them a premium price, and thereafter eschew its contractual obligations during the warranty period.

279.    Honda has knowledge and appreciation of these benefits, which were conferred upon it by and at the expense of Plaintiff and class members, who are left with vehicles that are less safe and less valuable than comparable vehicle with functioning, non-defective hands-free interfaces.

280.    Honda voluntarily accepted and retained these benefits.

281.    The circumstances, as described herein, are such that it would be unjust and inequitable for Honda to retain the benefit without restitution of the value thereof to Plaintiff and class members.

282.    Plaintiff and class members are entitled to restitution in the amount of Honda's benefits, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

**XIII.  COUNT VII**
**FRAUD BY CONCEALMENT (BASED ON WASHINGTON LAW)**

283.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

284.    Plaintiff brings this claim on behalf of the proposed Washington class.

CLASS ACTION COMPLAINT - 67

285.    Plaintiff and the other class members purchased vehicles in which the defective HandsFreeLink™ system was installed.

286.    Honda possessed exclusive knowledge of the defect in the HandsFreeLink™ system, and intentionally and actively concealed the fact that the HandsFreeLink™ system is defective and prone to create a parasitic electricity drain that strains the car's electrical system and repeatedly depletes the battery, leaving owners with cars that will not reliably start and that have batteries and other essential electrical components that are prone to failing—even while the car is on the road and during ordinary use.  Honda also concealed the fact that once the HandsFreeLink™ system defect compromises the battery, the system "resets," hiding the problem until the system becomes stuck again.

287.    Honda further affirmatively misrepresented to Plaintiff and other class members in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the vehicles had no significant defects, and that the HandsFreeLink™ system was a safety feature that was reliable and would perform and operate properly.

288.    Honda knew about the defect in the HandsFreeLink™ system when it made these representations.  Honda knew the defect was not known to or reasonably discoverable by Plaintiff or class members.  Nonetheless, Honda failed to disclose the defect, which a reasonable consumer would have found to be an important, material fact.  Honda also failed to disclose the performance problems and safety hazards caused by this defect.  This made Honda's incomplete and contradictory statements about the vehicle and its HandsFreeLink™ system deceptive and tantamount to a misrepresentation.

289.    Honda had a duty to disclose that the HandsFreeLink™ system is defective because Honda had knowledge of a material fact not readily apparent or observable and not easily discoverable by Plaintiff and class members.  Honda had a duty to disclose that the HandsFreeLink™ system is defective because the defect is a manifestly serious and dangerous

1    condition, which results in a vehicle that will not reliably start and could stall due to a dead

2    battery and other failed electrical components even when the vehicle is in use.

3        290.    Honda's false representations and omissions were material because they

4    concerned qualities that played a significant role in the value of the vehicles (affecting the

5    vehicle's performance, safety, and luxury), and because the defect constitutes an unreasonable

6    safety risk that would be material to a reasonable consumer.  The existence of a defect that

7    prevents a vehicle from starting reliably, causes a vehicle to stall even while in use, and requires

8    costly repairs is a material fact that would have affected Plaintiff and class members' decision to

9    purchase the vehicles and the price they were willing to pay for the vehicles.

10       291.    The defect was not readily apparent to or easily discoverable by Plaintiff and class

11   members.  The truth about the defective HandsFreeLink™ system was known only to Honda;

12   Plaintiff and the other class members did not know of these facts and Honda actively concealed

13   these facts from Plaintiff and class members.  Also, the defect tended to evade detection , in part

14   because it only manifested itself through the failure of other electrical components, in part

15   because it could trigger a reset if the battery drained too low, causing the problem to appear

16   'intermittent.'

17       292.    Plaintiff and the other class members reasonably relied upon Honda's deception.

18   They had no way of knowing that Honda's representations were false, misleading, or incomplete.

19   Plaintiff and class members had a right to rely on Honda's representations based on reasonable

20   consumer expectations that their hands-free interface will not be designed such that it causes the

21   car's battery and electrical components to regularly and prematurely fail, and based on

22   reasonable consumer expectations that such defects would be covered under their car's warranty.

23   Plaintiff and class members did not, and could not, unravel Honda's deception on their own.

24   Rather, Honda intended to deceive Plaintiff and class members by concealing the true facts about

25   the HandsFreeLink™ systems.

26

CLASS ACTION COMPLAINT - 69

293.    Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its vehicles, without telling consumers that one of the features had a fundamental defect that would negatively affect the safety, quality, and performance of the vehicle.

294.    Thus, Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defect in the HandsFreeLink™ system as set forth herein. These omitted and concealed facts were material because they directly impacted the value of the vehicles purchased by Plaintiff and class members, and because the defect constitutes an unreasonable safety risk that would be material to a reasonable consumer.

295.    Honda concealed and continues to conceal this material information in order to induce consumers to purchase the class vehicles at a premium price, and also to mislead owners during the warranty period in order to avoid having to fulfill their contractual obligations under the warranty.  Honda continues to sell vehicles with the defective HandsFreeLink™ system, but does not warn purchasers or disclose the defect to the public.  Honda continues to conceal and gloss over the problem by replacing HandsFreeLink™ units with equally defective HandsFreeLink™ units, and replacing failed batteries, alternators, and other electrical components without addressing the root of the problem.

296.    Plaintiff and class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed facts, in that they would not have purchased or paid as much for cars with faulty technology, and would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and class members' actions were justified. Honda was in exclusive control of the material facts, and the facts were not generally known to the public, Plaintiff, or class members.

297.    Because of the concealment and/or suppression of facts, Plaintiff and class members sustained damage because they were induced to purchase these vehicles and pay a

CLASS ACTION COMPLAINT - 70

premium price for vehicles that diminished in value as a result of Honda's concealment of the true quality of the HandsFreeLink™ systems, and that further require repeated, costly, and ineffective repairs.  Had Plaintiff and class members been aware of the defect in the HandsFreeLink™ systems and Honda's disregard for the truth, Plaintiff and class members would have paid less for their vehicles or would not have purchased them at all.

298.    The resale value of Plaintiff's and Class members' vehicles has diminished as a result of Honda's fraudulent concealment of the defective HandsFreeLink™ system, which has made any reasonable consumer reluctant to purchase any of the vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

299.    Also, Plaintiff and class members were deprived of safe and reliable transportation.  This defect poses an unreasonable safety risk, and renders their vehicles unsuited for ordinary use.

300.    Accordingly, Honda is liable to Plaintiff and class members for damages in an amount to be proven at trial.

301.    Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and class members' rights and the representations that Honda made to them, in order to enrich Honda. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## XIV.  REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the proposed classes, respectfully requests that the Court enter judgment in their favor and against Honda as follows:

A.    An order certifying the proposed national class (or in the alternative, the proposed Washington class), and appointing Plaintiff and his counsel to represent the class;

B.    An order awarding Plaintiff and class members their actual damages, exemplary damages, and/or any other form of monetary relief provided by law;

CLASS ACTION COMPLAINT - 71

1       C.      An order awarding Plaintiff and class members restitution, disgorgement,

2  rescission, or other equitable relief as the Court deems proper;

3       D.      An order requiring Honda to cease selling vehicles with the defective

4  HandsFreeLink™ system and to disclose and repair the defect;

5       E.      An order awarding Plaintiff and the class pre- and post-judgment interest as

6  allowed under the law;

7       F.      An order awarding Plaintiff and the class reasonable attorneys' fees and costs of

8  suit, including expert witness fees; and

9       G.      An order awarding such other and further relief as this Court may deem just and

10  proper.

## XV.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 1st day of March, 2017.

SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP

By:   /s/ James C. Shah, SBN #260435
James C. Shah, SBN #260435
Email:  jshah@sfmslaw.com
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 429-5272
Facsimile:  (866) 300-7367

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

TERRELL MARSHALL LAW GROUP PLLC

By:   /s/ Amanda M. Steiner, SBN #190047
      Toby J. Marshall *(pro hac vice forthcoming)*
      Email:  tmarshall@terrellmarshall.com
      Amanda M. Steiner, SBN #190047
      Email: asteiner@terrellmarshall.com
      Brittany A. Madderra *(pro hac vice forthcoming)*
      Email: bmadderra@terrellmarshall.com
      936 North 34th Street, Suite 300
      Seattle, Washington  98103-8869
      Telephone:  (206) 816-6603
      Facsimile:  (206) 319-5450

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 73

1

**LOCAL RULE 5-1(I)(3) STATEMENT**

2         Pursuant to Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this

3 document has been obtained from the signatory, and that I will maintain records to support this

4 concurrence by the signatory subject to this document as required under the local rules.

5         DATED this 1st day of March, 2017.

6                   TERRELL MARSHALL LAW GROUP PLLC

7
             By:    /s/ Amanda M. Steiner, SBN #190047

8                   Amanda M. Steiner, SBN #190047
                  Email: asteiner@terrellmarshall.com

9                   936 North 34th Street, Suite 300
                  Seattle, Washington  98103-8869

10                  Telephone:  (206) 816-6603

11                  Facsimile:  (206) 319-5450

12              *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 74